IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| Yankton Sioux Tribe v. Kempthorne, *et al.*, | ) ) ) | Civil Action No. 03-1603 (JR) |
| Pechanga Band of Luiseno Mission Indians v. Kempthorne, *et al.*, | ) ) ) | Civil Action No. 06-2206 (JR) |
| Colorado River Indian Tribes v. Kempthorne, *et al.*, | ) ) ) | Civil Action No. 06-2212 (JR) |
| Tohono O'odham Nation v. Kempthorne, *et al.*, | ) ) ) | Civil Action No. 06-2236 (JR) |
| Nez Perce Tribe, et al., v. Kempthorne, *et al.*, | ) ) ) | Civil Action No. 06-2239 (JR) |
| Passamaquoddy Tribe of Maine v. Kempthorne, *et al.*, | ) ) ) | Civil Action No. 06-2240 (JR) |
| Salt River Pima-Maricopa Indian Community v. Kempthorne, *et al.*, | ) ) ) | Civil Action No. 06-2241 (JR) |
| Ak-Chin Indian Community v. Kempthorne, *et al.*, | ) ) ) | Civil Action No. 06-2245 (JR) |

**DEFENDANTS' MOTION TO DISMISS**

Defendants, by and through their undersigned counsel, hereby move this Court for an Order dismissing Plaintiffs' Complaint(s) pursuant to Fed. R. Civ. P. 12(b)(1) and 12(h)(3) for lack of subject matter jurisdiction, Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted, and Fed. R. Civ. P. 12(c) because Defendants are entitled to judgment as a matter of law. In support of this Motion, Defendants submit the accompanying Memorandum of Points and Authorities.

Respectfully submitted this 16th day of June 2008,

RONALD J. TENPAS
Assistant Attorney General

*s/ John H. Martin*
JOHN H. MARTIN
United States Department of Justice
Natural Resources Section
1961 Stout Street, Eighth Floor
Denver, CO 80294
john.h.martin@usdoj.gov
Tel: (303) 844-1383
Fax: (303) 844-1350

ANTHONY P. HOANG
BRIAN COLLINS
United States Department of Justice
Environment and Natural Resources Div.
Natural Resources Section
P.O. Box 663
Washington, D.C.  20044-0663
Tel: (202) 305-0241
Tel: (202) 305-0428
Fax: (202) 353-2021

Attorneys for Defendant

OF COUNSEL:

LAWRENCE JENSEN
PAUL SMYTH
ELIZABETH BRANDON
THOMAS BARTMAN
Office of the Solicitor
United States Department of the Interior
Washington, D.C.  20240

TERESA DAWSON
Office of the Chief Counsel
Financial Management Service
United States Department of the Treasury
Washington, D.C.  20227

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| Yankton Sioux Tribe v. | ) | Civil Action No. 03-1603 (JR) |
| Kempthorne, *et al.,* | ) | |
| | ) | |
| Pechanga Band of Luiseno Mission Indians v. | ) | Civil Action No. 06-2206 (JR) |
| Kempthorne, *et al.*, | ) | |
| | ) | |
| Colorado River Indian Tribes v. | ) | Civil Action No. 06-2212 (JR) |
| Kempthorne, *et al.*, | ) | |
| | ) | |
| Tohono O'odham Nation v. | ) | Civil Action No. 06-2236 (JR) |
| Kempthorne, *et al.*, | ) | |
| | ) | |
| Nez Perce Tribe, *et al.*, v. | ) | Civil Action No. 06-2239 (JR) |
| Kempthorne, *et al.*, | ) | |
| | ) | |
| Passamaquoddy Tribe of Maine v. | ) | Civil Action No. 06-2240 (JR) |
| Kempthorne, *et al.*, | ) | |
| | ) | |
| Salt River Pima-Maricopa Indian Community v. | ) | Civil Action No. 06-2241 (JR) |
| Kempthorne, *et al.*, | ) | |
| | ) | |
| Ak-Chin Indian Community v. | ) | Civil Action No. 06-2245 (JR) |
| Kempthorne, *et al.*, | ) | |
| _____ | ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS**

**TABLE OF CONTENTS**

INTRODUCTION                                                                 1

SUMMARY OF ARGUMENT                                                          2

RELEVANT LITIGATION BACKGROUND AND LEGAL FRAMEWORK                           5

I.      ALLEGATIONS IN THE COMPLAINT                                         5

II.     STATUTORY BACKGROUND                                                 9

III.    STANDARD OF REVIEW                                                   11

ARGUMENT                                                                     12

I.      PLAINTIFFS FAIL TO STATE JURISDICTIONALLY VALID CLAIMS FOR
        DECLARATORY AND INJUNCTIVE RELIEF, AND, THEREFORE, THOSE
        CLAIMS MUST BE DISMISSED                                            12

        A.    To the Extent That Plaintiffs' Claims Are Not Predicated on the Cause
              of Action Provided by the Administrative Procedure Act, Those Claims
              Fail to State a Claim for Relief                               12

              1.    Neither the Common Law Nor Any of the Statutes Cited by
                    Plaintiff Provides a Private Cause of Action             15

              2.    Plaintiffs Have Not Properly Pled a Claim for Non-Statutory Review   20

        B.    Plaintiffs Fail to Properly Plead a Claim Under the APA        22

              1.    Plaintiffs Fail to State a Claim Under Section 706(1) of the APA
                    to Compel Unduly Delayed Agency Action                   23

                    a.    As Clarified by the Supreme Court, Only Discrete, Non-
                          Discretionary, Mandatory Duties May Be Enforced
                          under
                          Section 706(1) of the APA                         23

                    b.    The 1994 Act Created Specific, Time-Limited Historical
                          Accounting Duties for Tribes, All of Which Have Been
                          Completed, and, Therefore, No Claim for Unreasonable
                          Delay May Be Asserted At This Juncture            26

c.     None of the Statutes Identified by Plaintiffs, Not Even the 1994 Act, Sets Forth Discrete, Non-Discretionary, Mandatory Accounting Duties That May Be Enforced under Section 706(1) of the APA     29

2.     Plaintiffs Have Failed to Plead a Proper Claim Under Section 706(2) of the APA.     35

C.     Plaintiffs' Claims for Monetary Relief, Thinly Veiled As Equitable Claims, Must Be Dismissed     39

1.     Plaintiffs' Demand for a "Restatement" of Account Balances, Disgorgement, Restitution, or Other Equitable Relief Is Actually an Impermissible Demand for a Monetary Reward     40

2.     The United States Has Not Waived its Sovereign Immunity for Thinly Disguised Monetary Claims in the District Court     41

3.     The Waiver of Sovereign Immunity in Section 702 of the APA Does Not Apply, Because the Indian Tucker Act Impliedly Forbids the Award of Money     45

II.     PLAINTIFFS' PRE-1946 CLAIMS, INCLUDING ANY CLAIMS FOR AN ACCOUNTING RELATED TO THE INTERIOR DEPARTMENT'S TRUST MANAGEMENT BEFORE 1946, ARE BARRED BY SECTION 12 OF THE INDIAN CLAIMS COMMISSION ACT     51

III.     PLAINTIFFS' CLAIM FOR A NON-MONETARY ASSET ACCOUNTING SHOULD BE DISMISSED, BECAUSE CONGRESS HAS ESTABLISHED NO ACCOUNTING DUTY RELATING TO NON-MONETARY ASSETS     58

A.     Congress Has Established No Accounting Duty Relating to Non-Monetary Tribal Assets.     58

B.     The Doctrine of Exhaustion of Administrative Remedies Requires Dismissal of Plaintiffs' Non-Monetary Asset Accounting Claims.     59

CONCLUSION     62

# INTRODUCTION

Pursuant to the Court's order dated May 6, 2008, Defendants make this motion for dismissal of claims in these eight Tribal trust accounting cases that seek declaratory and injunctive relief based on allegations that Defendants breached their trust duties and responsibilities to Plaintiffs and that Defendants failed to provide Plaintiffs with full and complete historical trust accountings.[1]  Each of the eight Complaints include common elements that are the focus for this motion to dismiss. Specifically, each of the Complaints requests declaratory and injunctive relief, requiring Defendants to produce a full and complete accounting of trust assets.  Some of the Complaints also demand an accounting of Plaintiffs' non-monetary or non-fund trust property.  Each of the Complaints asserts that Defendants have breached their duty to account and, at a minimum, contends that the account statements and fund balances provided by the United States Department of the Interior ("Interior") in 1996 to Plaintiffs and other Tribes, pursuant to Interior's Tribal Reconciliation Project ("TRP") and Section 304 of the American Indian Trust Fund Management Reform Act of 1994 ("1994 Act"), 25 U.S.C. § 3044, in particular, are insufficient.  Each of the Complaints requests, in one form or another, an increase in the balances of Plaintiffs' trust funds on the basis of the accountings that they seek.  Further, through the allegations in the Complaints or through statements to the Court, each of the Plaintiffs in the eight cases asserts a right to judicial review and a right to relief, without regard to the limits on judicial review of agency action set forth by the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.* ("APA").

---

[1]    Defendants are moving to dismiss claims in the eight Tribal trust accounting cases that are captioned above.  The memoranda of points and authorities that Defendants are filing in support of their motions in the eight cases are identical, except for Parts I and II of the section entitled "Relevant Litigation Background and Legal Framework."  These two parts summarize the specific claims and allegations that are the subject of Defendants' motions to dismiss and, therefore, vary from case to case.

Plaintiffs have not framed their claims as ordinary APA challenges to final agency action, however. Where Plaintiffs have invoked the APA's cause of action, they have not done so in an adequate manner, and, as a result, they have not invoked properly this Court's authority to undertake judicial review under the APA. The several ways in which Plaintiffs have alleged or explained their claims have important threshold and jurisdictional defects, which require this Court to dismiss the claims, either for lack of jurisdiction or for failure to state a claim. As detailed below, this Court should enter judgment for Defendants on the pleadings in these eight Tribal trust accounting cases.

## SUMMARY OF ARGUMENT

As explained below, these eight Tribal trust accounting cases lack the requisite basis to proceed independent of the APA's limits on judicial review. No federal statute grants Plaintiffs a private cause of action against Defendants for breach of trust or compulsion of an accounting, especially given the APA's provisions for judicial review. In fact, Plaintiffs' claims have been pled or explained to this Court as an express means to avoid judicial review under the APA. Thus, the claims have to be dismissed for lack of a separate statutory cause of action.

Also, Plaintiffs' claims for breach of trust and to compel an accounting do not satisfy the prerequisites for judicial review pursuant to the APA. The Interior Department has completed the specific actions required by Section 304 of the 1994 Act, 25 U.S.C. § 3044, as to "historical accountings" for Tribes, so that claims of unreasonable delay (under Section 706(1) of the APA) for any asserted failure to provide the full and complete accountings sought by Plaintiffs have no legal footing. Plaintiffs' claims are fundamentally dissimilar to those asserted in *Cobell v. Kempthorne*, No. 96-01285 (JR) (D.D.C.), because, in these Tribal trust accounting cases, Plaintiffs have already received Interior's account statements and decisions on the reconciled opening balances in their trust

fund accounts.

Further, the broad holding in *Cobell v. Norton*, 240 F.3rd 1081 (D.C. Cir. 2001) (*Cobell VI*), which enforced, under Section 706(1) of the APA, a non-discrete, non-ministerial duty in the 1994 Act to provide a complete accounting to Plaintiffs in that case, is not applicable to these cases, because of the Supreme Court's decision in *Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55 (2004) (*SUWA*).  This Court has no authority to compel Defendants to produce the accountings sought by Plaintiffs, because the requested accountings are not required agency actions, and Defendants are not under a non-discretionary, ministerial duty to produce such accountings.  Rather, Defendants' trust duties, as they apply here, are programmatic and not subject to review under Section 706(1) of the APA.

The Complaints in these eight Tribal trust accounting cases are instructive here.  In those pleadings, Plaintiffs have not described, and cannot describe, the actual accounting that is required. Rather, they contend only that the Court has the authority to write the rules for such an accounting based on the flexible and *ad hoc* rules of equity.  Plaintiffs' contention is without merit because the statutes upon which they rely lack the specificity required for the Court to compel such an accounting.  The contradictions in Plaintiffs' theory of the accounting are fatal to their ability to bring and maintain these trust accounting cases under the analysis required by *SUWA*.

Insofar as Plaintiffs are limited to challenges to their TRP reports or the transactions and account balances reported therein, Plaintiffs have not invoked adequately this Court's authority under APA § 706(2) to review final agency action.  Although Plaintiffs cite the APA to some extent, none of their Complaints adequately targets any final agency action by any individual Defendant in a way that would permit this Court to review that action, without violating the rules that prohibit

review of programmatic agency action.  For example, none of the Complaints alleges that the Secretary of the Treasury has failed to perform its statutory duty to make investments as requested by the Secretary of the Interior.  Nor do any of the Complaints put forth any plausible argument that Treasury has failed to take any other specific agency action required by a particular statute.  For this reason alone, the Complaints as to Treasury should be dismissed for failure to state a claim.

Additionally, to the extent that Plaintiffs demand a restatement of their trust fund account balances and other monetary relief in the Complaints, those demands and the underlying claims are beyond this Court's jurisdiction.  The United States has not waived its sovereign immunity to such monetary claims.  Moreover, the Tucker Act and Indian Tucker Act, 28 U.S.C. §§ 1491, 1505, provide the exclusive jurisdiction for Plaintiffs' breach of trust claims, and, therefore, those claims cannot be brought under the APA's waiver of sovereign immunity, 5 U.S.C. § 702, given that waiver is limited to claims seeking non-monetary relief and that the Tucker and Indian Tucker Act preclude APA review for not only breach of contract actions, but also the breach of trust claims that have been pled herein.  A ruling by the Court in these cases, if adverse to Defendants, would serve to determine the existence and extent of damages that might be owed to Plaintiffs and thus would undermine impermissibly the exclusive jurisdiction of the United States Court of Federal Claims over such claims.

Yet another statute restricting this Court's jurisdiction under Section 702 of the APA is the Indian Claims Commission Act ("ICCA"), 25 U.S.C. §§ 70 - 70n-2 (terminated September 30, 1978).  That Act provided for the exclusive jurisdiction of the Indian Claims Commission ("ICC") over all of Plaintiffs' claims against the United States that existed on August 13, 1946.  Hence, this Court lacks jurisdiction under the APA over any claims for an accounting of (or indeed any claim

challenging) government actions occurring prior to that date.

Also, several Plaintiffs sweep a claim for an accounting of their non-monetary assets into their demand for an accounting. Plaintiffs' claim for such an accounting should be dismissed, because federal law contains no accounting duty relating to such trust assets that may be compelled under an undue delay theory and Section 706(1) of the APA. Further, Plaintiffs' non-monetary asset accounting claim should be dismissed for failure to exhaust the administrative remedies provided by the Bureau of Indian Affairs ("BIA") of the Interior Department, under 25 C.F.R. Parts 2 and 150.

Based on the foregoing array of arguments, Plaintiffs' claims for historic trust accounting and breach of trust should be dismissed.

## **RELEVANT LITIGATION BACKGROUND AND LEGAL FRAMEWORK**

I.    ALLEGATIONS IN THE COMPLAINT

At the heart of the Complaint filed by the Salt River Pima Maricopa Indian Community is the broad allegation that Defendants, as trustees of Tribal trust funds and assets, have "grossly mismanaged and continue to grossly mismanage the trust and have failed for over a century to carry out the most basic and fundamental trust duties owed to [Plaintiff]." Salt River Pima-Maricopa Indian Community (SRPM) Complaint, ¶ 4. The Plaintiff Tribe explains that the purpose of its lawsuit is "to seek redress of breaches of trust by the United States . . . in the management and accounting of trust assets, including funds and lands, belonging to the plaintiff . . . , and to compel the defendants to provide a full and complete accounting of all trust assets belonging to the Community. . ." *See id.*, ¶ 1. The two-count Complaint seeks declaratory, injunctive and monetary relief. *See id.,* ¶¶ 1, 4, 19-44.

In Count One, Plaintiff seeks a declaration that the Government is in breach of fiduciary

duties owed to Plaintiff by "failing to provide the Community with a complete, accurate, and adequate accounting of the Community's trust assets as required by law." *See id.*, ¶ 38; *see also id.*, ¶¶ 34-37.   In Count Two, Plaintiff seeks injunctive and monetary relief for the breaches of trust, including a demand that the Court compel Defendants to produce an accounting for the purpose of allowing Plaintiffs to take exception and for judicial review and adjustment of the account balances. *See id.*, ¶ 40-44.

For relief, Plaintiff demands an injunction ordering the Government to "provide a complete, accurate, and adequate accounting of the Community's trust assets. . .". *Id.*, ¶ 42.  Moreover, Plaintiff demands monetary relief in the form of a "restatement of [its] trust fund balances in conformity with the ultimate and complete accounting, and to any additional equitable relief that may be appropriate (e.g., disgorgement, equitable restitution, or an injunction directing the trustee to take action against third parties)." *See id.*, ¶ 43; *see also* Prayer for Relief, ¶¶ 5-6.

Plaintiff alleges that its longstanding trust relationship with the United States and the United States' resulting fiduciary duties are derived from "numerous statutes and regulations." *See id.*, ¶¶ 9, 16.   Plaintiff cites the following statutes: Indian Nonintercourse Act, 25 U.S.C. § 177; Indian Long Term Leasing Act, 25 U.S.C. § 396; Indian Mineral Leasing Act of 1938, 25 U.S.C. §§ 396a-396g; Federal Oil & Gas Royalty Management Act, 30 U.S.C. §§ 1701 *et seq.*; Indian Mineral Development Act of 1982, 25 U.S.C. §§ 2101 *et seq.*; 25 U.S.C. § 152; 25 U.S.C. §§ 157-58, 160; 25 U.S.C. §§ 311, 312, 318a, 319, 321, 323-28; 25 U.S.C. § 397; 25 U.S.C. §§ 398 *et seq.*; 25 U.S.C. § 399; 25 U.S.C. §§ 415-16; 31 U.S.C. § 1321(a). *See id.*, ¶¶ 9, 16. Plaintiff also cites the American Indian Trust Fund Management Reform Act, 25 U.S.C. §§ 4011 *et seq. See id., e.g.*, SRPM Compl.

¶¶ 16, 25-27.  In addition, Plaintiff cites a number of Department of the Interior appropriations acts.[2]

Further, Plaintiff cites to the following regulations: 25 C.F.R. Part 87; 25 C.F.R. Parts 150-51; 25

C.F.R. Part 162; 25 C.F.R. Part 166; 25 C.F.R. Part 169; 25 C.F.R. Part 211; 25 C.F.R. Part 216; 25

C.F.R. Part 225; 30 C.F.R. Part 206; and 43 C.F.R. § 3590.2(i).

Plaintiff's allegations challenge Defendants' stewardship over and accounting for Plaintiff's

trust funds, lands and assets for all time periods and in all respects.  *See id*, ¶¶ 2-3.  In the accounting

that Plaintiff seeks, it requests judicial review of each and every of the Government's past actions

as trustee related to the management of (1) Plaintiffs' tribal trust lands, associated resources and

income derived therefrom; and (2) other assets held in trust by the Government for Plaintiffs' benefit

in the form of monies derived from judgments entered by federal courts on various claims brought

by Plaintiff against the Government.  *See id.*, ¶¶ 2-3, 13, 14.  Moreover, Plaintiff seeks review of the

Government's contemporaneous record-keeping, or accounting of those actions.  *See id.,* ¶¶ 4(b),

(e); 20(a), (b); 34-39.  In the Complaint, Plaintiff  alleges that:

> Tribal lands, associated resources, and the income derived therefrom constitute a
> substantial portion of the assets held by the United States in trust for the
> Community's benefit.  Title to the land constituting the Community's reservation is
> held in trust by the United States, with the Community as the beneficial owner of the
> land and associated natural resources.  Income is derived from, *inter alia,* the sale of
> these natural resources and the conveyance of certain interests in the Community's
> tribal trust land, including leases, easements, and rights of way.  These assets and the
> income they produce form the core of the Community's tribal trust assets.

---

[2]      The Complaint cites the following appropriations acts: 101 Stat. 1329 (Act of Dec. 22, 1987);
103 Stat. 701(Act of Oct. 23, 1989); 104 Stat. 1915 (Act of Nov. 5, 1990); 105 Stat. 990 (Act of
Nov. 3, 1991); 106 Stat. 1374 (Act of Oct. 5 1992); 107 Stat. 1379 (Act of  Nov. 11, 1993); 108 Stat.
2499 (Act of Sept. 30, 1994); 110 Stat. 1321 (Act of Apr. 26, 1996); 110 Stat. 3009 (Act of Sept.
30, 1996); 111 Stat. 1543 (Act of Nov. 14, 1997);112 Stat. 2681 (Act of Oct. 21, 1998); 113 Stat.
1501 (Act of Nov. 29, 1999); 114 Stat. 922 (Act of Oct. 11, 2000); Pub. L. No. 107-63 (Act of Nov.
5, 2001).  *See id*, ¶¶ 29, 31.

*Id.*, ¶ 13.

The breaches alleged by Plaintiff relating to the Government's management of tribal lands, associated resources and judgment monies include: (1) the failure to provide and unconscionably delaying the performance of a complete, accurate and adequate accounting of trust property; (2) the failure to maintain adequate books and records with respect to the trust property, including but not limited to, records of leases and other contractual arrangements giving rise to income from the trust property and records of investments of tribal trust assets; (3) the failure to take reasonable steps to preserve and protect trust property; (4) the failure to use reasonable skill and care to invest and deposit trust funds in such a way as to maximize the productivity of trust property within the constraints of law and prudence; and (5) the failure to ensure that trust assets are used for their highest and best use.  *See* SRPM Compl. ¶ 20.

The parties in these cases have filed their Joint Report pursuant to Fed. R. Civ. P. 26(f) and Local Civil Rule ("LcvR") 16.3 ("Rule 26(f) Report").  In the Rule 26(f) Report, Plaintiff SRPM characterized its cause of action against the United States as one for breach of trust arising under the laws of the United States that in no way implicates the substantive or procedural standards of the APA.  *See* Rule 26(f) Report at 5-6.  Instead, Plaintiff asserts that its primary and independent cause of action is the claim of a "beneficiary seeking to enforce the trust terms and duties against the trustee."  *Id.* at 6.  Plaintiff argues that this cause of action is rooted in various "statutes and regulations" that create the trust relationship between the United States and Plaintiff.  *See id.* at 5-6 (citing III William F. Fratcher, Scott on Trusts § 199, at 203-04 (4th ed. 1988)).  Plaintiff suggests that this case is simply one of a private beneficiary seeking to enforce the terms and duties of a trust against a private fiduciary under equity and common law.  *See* Rule 26(f) Report at 6-7.

- 8 -

II.    STATUTORY BACKGROUND

Plaintiffs in each of the eight cases in which this motion to dismiss has been filed generally assert that their claims arise under a long list of statutes and other law described above.  For purposes of this motion, however, the central focus is the 1994 Act, 108 Stat. 4239 (1994) (codified as amended at 25 U.S.C. §§ 161a-162a, §§ 4001 *et seq*.).  The 1994 Act contains three sections that are primarily relevant to the issues raised here, Sections 101, 102 and 304.  25 U.S.C. §§ 162a(d), 4011, 4044.

Section 102 directs the Secretary of the Interior ("Interior" or "Interior Secretary") to account for the daily and annual balances of all funds held in trust by the United States for the benefit of individual Indians and Indian tribes that are deposited or invested pursuant to the Act of June 24, 1938.

Section 102 of the 1994 Act provides:

(a) Requirement to Account.  The Secretary shall account for the daily and annual balance of all funds held in trust by the United States for the benefit of an Indian tribe or an individual Indian which are deposited or invested pursuant to section 162a of this chapter.

(b) Periodic Statement of Performance.  Not later than 20 business days after the close of a calendar quarter, the Secretary shall provide a statement of performance to each Indian tribe and individual with respect to whom funds are deposited or invested pursuant to the Act of June 24, 1938 (25 U.S.C. 162a).  The statement, for the period concerned, shall identify --

> (1) the source type, and status of the funds;
> (2) the beginning balance;
> (3) the gains and losses;
> (4) the receipts and disbursements; and
> (5) the ending balance.

(c) Annual Audit.  The Secretary shall cause to be conducted an annual audit on a fiscal year basis of all funds held in trust by the United States for the benefit of an Indian tribe or an individual Indian which are deposited or invested pursuant to the

- 9 -

Act of June 24, 1938 (25 U.S.C. 162a), and shall include a letter relating to the audit in the first statement of performance provided under subsection (b) after the completion of the audit.

25 U.S.C. § 4011.

In addition, section 101 of the 1994 Act, amending 25 U.S.C. § 162a, provides that the Secretary, as part of his trust responsibilities, must provide "adequate systems for accounting for and reporting trust fund balances," must determine "accurate cash balances," and provide "periodic, timely reconciliations to assure the accuracy of accounts." 25 U.S.C. § 162a(d)(1).

The 1994 Act specifically addresses the Interior Secretary's obligations for tribal trust fund accounts, by delineating more specific duties regarding reconciliation, accounting, and reporting balances for the Tribal trust fund accounts. Section 304 of the Act sets forth requirements that apply only to Tribal accounts:

> The Secretary shall transmit to the Committee on Natural Resources of the House of Representatives and the Committee on Indian Affairs of the Senate, by May 31, 1996, a report identifying for each tribal trust fund account for which the Secretary is responsible a balance reconciled as of September 30, 1995. In carrying out this section, the Secretary shall consult with the Special Trustee. The report shall include–
>
> (1) a description of the Secretary's methodology in reconciling trust fund accounts;
>
> (2) attestations by each account holder that–
>
>> (A) the Secretary has provided the account holder with as full and complete accounting as possible of the account holder's funds to the earliest possible date, and that the account holder accepts the balance as reconciled by the Secretary; or
>>
>> (B) the account holder disputes the balance of the account holder's account as reconciled by the Secretary and statement explaining why the account holder disputes the Secretary's reconciled balance; and
>
> (3) a statement by the Secretary with regard to each account balance disputed by the account holder outlining efforts the Secretary will undertake to resolve the dispute.

- 10 -

25 U.S.C. § 4044.

III.   STANDARD OF REVIEW

In deciding a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), a

court must accept the complaint's factual allegations as true. *Cummings v. Dep't of the Navy*, 279

F.3d 1051, 1053 (D.C. Cir. 2002) (citing *El-Hadad v. United Arab Emigrates,* 216 F.3d 29, 32 n.

5 (D.C. Cir. 2000)(citing *Saudi Arabia v. Nelson,* 507 U.S. 349, 351 (1993)). The complaint must

be dismissed if plaintiff cannot prove any set of facts that would entitle it to relief. *Cicippio-Puleo*

*v. Islamic Republic of Iran*, 353 F.3d 1024, 1032 (D.C. Cir. 2004), *see also Bell Atlantic Corp. v.*

*Twombly*, 127 S.Ct. 1955, 1964-65 (2007) (quoting *Papasan v. Allain,* 478 U.S. 265, 286 (1986)

("[A] plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than

labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.")

(internal quotes omitted)).

In considering a motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) and

12(h)(3), the Court must consider whether Plaintiffs' allegations are sufficient to meet their burden

of establishing the Court's jurisdiction over this claim. *Kokkonen v. Guardian Life Ins. Co. of Amer.*,

511 U.S. 375, 377 (1994).  Because the federal courts "possess only that power authorized by

Constitution and statute," Plaintiffs must identify a statute or constitutional provision that provides

jurisdiction. *Id.*  Moreover, in a suit against the United States, Plaintiffs must also identify an

applicable waiver of sovereign immunity in order to establish jurisdiction. *United States v. Mitchell*,

463 U.S. 206, 212 (1983).  It is Plaintiffs' burden to establish that the court has subject matter

jurisdiction to hear the case. *In re Swine Flu Immunization Prods. Liab. Litig.*, 880 F.2d 1439,

1442-43 (D.C. Cir. 1989).  While the Court must accept as true all factual allegations contained in

- 11 -

the complaint, *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993) (citing *United States v. Gaubert,* 499 U.S. 315, 327 (1991), "plaintiff's factual allegations in the complaint . . . will bear closer scrutiny" when the court's subject matter jurisdiction has been challenged. *Grand Lodge of the Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13-14 (D. D.C. 2001) (quoting 5A Charles A. Wright & Arthur R. Miller, Fed.Prac. & Proc.Civ.2d, § 1350)(internal quotation marks omitted).  In making its determination regarding the existence of subject matter jurisdiction, the court may consider matters outside the pleadings.  *Lipsman v. Sec'y of the Army*, 257 F.Supp.2d 3, 6 (D. D.C. 2003) (citing *Herbert v. Nat'l Acad. of Sciences,* 974 F.2d 192, 197 (D.C. Cir. 1992)).

Under Fed.R.Civ.P. 12(c), a motion for judgment on the pleadings shall be granted if the moving party demonstrates that "no material fact is in dispute and that it is entitled to judgment as a matter of law." *Stewart v. Evans*, 275 F.3d 1126, 1132 (D.C. Cir. 2002) (quoting *Peters v. Nat'l R.R. Passenger Corp.*, 966 F.2d 1483, 1485 (D.C. Cir.1992) (citations and internal quotes omitted)). In considering a motion for judgment on the pleadings, the Court should "accept as true the allegations in the opponent's pleadings" and "accord the benefit of all reasonable inferences to the non-moving party." *Stewart*, 275 F.3d at 1132, (quoting *Haynesworth v. Miller*, 820 F.2d 1245, 1249 n.11 (D.C. Cir. 1987) (citations omitted)).

## **ARGUMENT**

I.    PLAINTIFFS FAIL TO STATE JURISDICTIONALLY VALID CLAIMS FOR DECLARATORY AND INJUNCTIVE RELIEF, AND, THEREFORE, THOSE CLAIMS MUST BE DISMISSED.

A.    To the Extent That Plaintiffs' Claims Are Not Predicated on the Cause of Action Provided by the Administrative Procedure Act, Those Claims Fail to State a Claim for Relief.

Plaintiffs have made clear that they are not relying on the Administrative Procedure Act for their primary cause of action, rejecting the notion that their claims must conform to the general cause of action provided by the APA. *See, e.g.,* Plaintiffs' Joint Memorandum In Opposition to Defendants' Motion For Remand and Stay of Litigation at 1, 3 n.1, 37, 39-46 (Case No. 06-02236, Dkt. # 20). Plaintiffs frame their claims as "an independent cause of action inherent in the rights of a trust beneficiary seeking to enforce the trust terms and duties against a trustee," *id.* at 39, and refer to numerous statutes and regulations they contend establish the trust relationship and provide the necessary cause of action. *See, e.g.,* Salt River Pima- Maricopa Indian Community Compl. ¶ 16.[3] Plaintiffs argue, apparently in reliance on cases such as *United States v. Mitchell*, 463 U.S. 206 (1983) ("*Mitchell II*"), that these statutes and regulations give rise to trust duties that can be enforced outside of the APA and that the APA's sole applicability to their cases is to provide the necessary waiver of sovereign immunity.[4] *See* Plaintiffs' Joint Memorandum In Opposition to Defendants' Motion For Remand and Stay of Litigation at 41-46.

In attempting to assert claims independently of the APA in this Court, Plaintiffs

---

[3] The Complaints filed by the Tohono O'odham Nation, Salt River Pima Maricopa Indian Community, Ak-Chin Indian Community, and Passamaquoddy Tribe of Maine cite the same sources of law. The Nez Perce Tribe's Complaint cites a host of federal law, both in statute, caselaw, and other sources for the proposition that the duty to account is an inherent fiduciary duty, but allege only generally that its action arises under federal law. *See* Nez Perce First Amended Compl. at ¶ 24. The Yankton Sioux Tribe's Complaint also contains generic references to "Federal statutory law" (¶¶ 5 & 9), as well as the APA (¶ 5). The Complaints of the Colorado River Indian Tribes ("CRIT") (at ¶ 5) and Pechanga Band of Luiseno Mission Indians ("Pechanga") (at ¶ 6) also cite to unspecified federal law, in addition to Sections 702 and 706 of the APA, in the jurisdictional portion of their Complaints, but they do not include any discussion regarding the statutory basis for their causes of action.

[4] Plaintiffs may not gloss over the necessity to ground their claims on a recognized cause of action. Even where a waiver of sovereign immunity exists, a plaintiff must still identify "the source of substantive law... [that] provides an avenue for relief." *FDIC v. Meyer*, 510 U.S. 471, 484 (1994) (quoting *United States v. Mitchell*, 463 U.S. 206, 218 (1983)).

fundamentally misconstrue the causes of action that are available to them regarding an agency's alleged failure to fulfill statutorily created fiduciary duties. For statutes that are money-mandating, one available avenue of redress is to seek damages in the Court of Federal Claims. As the Supreme Court recognized in *Mitchell II*, the Indian Tucker Act waives the immunity of the United States, and provides the remedial scheme for such actions. 463 U.S. at 218-19. Of importance here, the United States Court of Federal Claims (CFC) has exclusive jurisdiction over claims brought under the Indian Tucker Act, which means that this Court cannot entertain such claims here. 28 U.S.C. § 1491(a) (1).

The other avenue available to Plaintiffs is to seek judicial review of agency action with corresponding requests for declaratory or injunctive relief. Federal courts have recognized that there are generally only two possible bases for this type of judicial review of federal agency action. *See, e.g., Reg'l Mgmt. Corp., Inc. v. Legal Servs. Corp.,* 186 F.3d 457, 461 (4th Cir. 1999). First is the APA, which "provides the generally applicable means for obtaining judicial review of actions taken by federal agencies." *Id.,* quoting *Clouser v. Espy,* 42 F.3d 1522, 1528 n. 5 (9th Cir. 1994). "Second, a substantive statute may provide a private right of action for judicial review of an agency action." *Id.,* citing *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 882 (1990). Consistent with this analytical framework, the D.C. Circuit has repeatedly recognized that the APA provides the sole vehicle for judicial review of the federal actions challenged by these Plaintiffs, absent a statutory private right of action.[5/] *See, e.g., Nat'l Ass'n of Home Builders v. Norton*, 415 F.3d 8, 13 (D.C. Cir.

---

[5/]    As explained *infra*, the availability of non-statutory judicial review of certain extraordinary claims for *ultra vires* actions or the violation of constitutional rights is not at issue here. Plaintiffs' claims do not fit within this limited exception to the requirement that the Court base its review on a private right of action.

2005), *Trudeau v. FTC*, 456 F.3d 178, 188 (D.C. Cir. 2006)*; Public Citizen v. U.S. Trade Representative*, 5 F.3d 549, 551 (D.C. Cir. 1993) (stating that, where there is no congressionally created private right of action, a plaintiff must rest the claim for judicial review on the APA); and *Worthington Compressors, Inc. v. Costle,* 662 F.2d 45, 49-50 (D.C. Cir. 1981) (holding that the APA provided the only basis for judicial review, because the Noise Control Act provided no private right of action).

   As discussed below, Plaintiffs cannot point to any provision or case law that would provide a cause of action outside of the APA. While Plaintiffs generally cite a variety of statutes, regulations, and federal common law, they do not point to any single provision of law that contains express language providing them with a private right of action in this Court for alleged violations of its provisions. *See Bates v. Nw. Human Svcs.*, 466 F. Supp. 2d 69, 97-102 (D.D.C. 2006) (granting the defendant's motion to dismiss and finding that sections 405 and 1383 of the Social Security Act do not create private causes of action). The laundry list of statutes and regulations cited by Plaintiffs simply do not contain an express private cause of action. Moreover, Plaintiffs may not rely on a theory of "non-statutory" judicial review to establish this Court's jurisdiction under the APA's waiver of sovereign immunity. *See infra* at 20.

   Dismissal of all non-APA claims in these cases is therefore appropriate because "the party who brings a suit is master to decide what law he will rely upon . . . ." *Fair v. Kohler Die & Specialty Co.*, 228 U.S. 22, 25 (1913). Such is the case here as Plaintiffs press their claims independent of the APA and any statutory right to relief.

   1.   <u>Neither the Common Law Nor Any of the Statutes Cited by Plaintiff Provides a Private Cause of Action.</u>

Plaintiffs have not identified any positive federal law that expressly or impliedly creates a

private right or cause of action for judicial review of Defendants' conduct. "Like substantive federal law itself, private rights of action to enforce federal law must be created by Congress." *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001) (citing *Touche Ross & Co. v. Redington,* 442 U.S. 560, 578 (1979) (the available remedies are those "that Congress enacted into law")). Plaintiffs bear the burden of proving that Congress intended to make a private right of action available to enforce the statutory provisions they rely upon. *Suter v. Artist M.,* 503 U.S. 347, 363-64 (1992). Plaintiffs' burdens are especially high because they assert a private right of action against Defendants with the express goal of evading the explicit restrictions that Congress has placed on judicial review of federal agency action under the APA. *See e.g. Nez Perce Tribe et al v. Kempthorne* Joint Report Pursuant to Fed. R. Civ. P. 26(6) and Local Civil Rule 16.3 at 2 (Case No. 06-2239, Dkt. No. 45) ("Defendants' position that any reference in a pleading to review of agency action somehow converts the entire action to an exclusive APA action is simply baseless."); *Ak-Chin Indian Community v. Kempthorne* Joint Report Pursuant to Fed. R. Civ. P. 26(6) and Local Civil Rule 16.3 (Case No. 06-2245, Dkt. No. 12) ("**This is an Action for Breach of Trust Arising Under the Laws of the United States—and not an APA Review Case**") (emphasis in original); and Plaintiffs' Joint Memorandum In Opposition To Defendants' Motion For Remand and Stay of Litigation at 37 ("Plaintiff-Beneficiaries in no way rely upon the APA to provide the cause of action.").[6]

Plaintiffs' references to 28 U.S.C. §§ 1361 and 1362 and the common law applicable to private trusts do not satisfy their burden to identify a cause of action. When similar claims were made in the *Cobell* litigation, this Court and the Court of Appeals for the D.C. Circuit determined

---

[6]    CRIT and Pechanga cite 5 U.S.C. §§ 702 and 706 as two of the statutes providing the jurisdictional basis for their Complaints (*see* Pechanga's First Amend. Compl. ¶ 6; CRIT's Second Amend. Compl. ¶ 5), but otherwise they do not discuss the APA's applicability in their Complaints.

that there is no common law claim for breach of trust against the United States.  *See Cobell v. Babbitt*, 91 F. Supp. 2d 1, 29 (D.D.C. 1999) (*Cobell V*); see also *Cobell VI*, 240 F.3d at 1104 ("No common law claim for an accounting is cognizable. . . ."); *Cobell v. Norton*, 392 F.3d 461, 472 (D.C. Cir. 2004) (*Cobell XIII*) ("Insofar as plaintiffs may have said that [they could invoke all the rights that a common law trust entails against the government in this case], they were wrong.") (quoted in *Cobell v. Norton*, 226 F.R.D. 67, 76 n.6 (D.D.C. 2005)), *See also Gros Ventre Tribe v. United States*, 469 F.3d 801 (9th Cir. 2006) (Tribes have no common law action for breach of trust independent of statutory rights).  This Court does not possess the discretion of a "private-law chancellor" in fashioning any remedy.  *Cobell v. Norton*, 428 F.3d 1070, 1077 (D.C. Cir. 2005);  *see also Naganab v. Hitchcock*, 202 U.S. 473, 476 (1906) (claim seeking an accounting from Interior Department dismissed for lack of jurisdiction, *inter alia*, because "there is no act of Congress in anywise authorizing this action").

28 U.S.C. § 1362 cannot be read to create a cause of action for common law breach of trust against the federal government, because that statute expresses no intent to create a remedial scheme and private right of action <u>against</u> the government as trustee.[7]  Rather, the statute was intended "to open the federal courts to the kind of claims that could have been brought <u>by</u> the United States as trustee, but for whatever reason were not so brought."  *Moe v. Confederated Salish and Kootenai Tribes of Flathead Reservation*, 425 U.S. 463, 472 (1976) (emphasis added).    Thus, the statute—which deals with jurisdiction and not whether Plaintiffs have the right in a particular court

---

[7]    The statute provides, "The district courts shall have original jurisdiction of all civil actions, brought by any Indian tribe or band with a governing body duly recognized by the Secretary of the Interior, wherein the matter in controversy arises under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1362.

to any particular remedy under any particular statute—may not be read as authorization by Congress for the present claims against Defendants.[8]

The other statutes cited in the Complaints generally relate to the United States' management of Indian trust funds and assets.[9]  None of these statutes contains an explicit private cause of action, and Congress unquestionably knows how to create remedies for the violation of specific statutory rights or obligations when desired.  *See, e.g.*, Ute Indian Rights Settlement Act, § 507(c), Pub. L. No. 102-575, 106 Stat. 4600, 4655 (1992) ("[T]he Tribe is authorized to bring an action for an accounting against the United States, if applicable, in the United States Claims Court for moneys owed plus interest at 10 percent . . . "); *Hallstrom v. Tillamook County*, 493 U.S. 20, 23 n.1 (1989) (citing various environmental statutes that have explicit citizen suits provisions).

Most tellingly, the 1994 Act, upon which the Complaints rely most heavily, does not contain

_____

[8]       In the jurisdictional portion of their Complaints, CRIT and Pechanga also cite 28 U.S.C. § 1361, a statute that grants federal district courts "original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."  28 U.S.C. § 1361.  Their efforts are unavailing.

       The D.C. Circuit has emphasized that jurisdiction under 28 U.S.C. § 1361 is "strictly confined."  *In re Cheney*, 406 F.3d 723, 729 (D.C. Cir. 2005) ("[M]andamus is 'drastic'; it is available only in 'extraordinary situations'; it is hardly ever granted; those invoking the court's mandamus jurisdiction must have a 'clear and indisputable' right to relief; and even if the plaintiff overcomes all these hurdles, whether mandamus relief should issue is discretionary.") (internal quotations omitted).  More importantly, the D.C. Circuit has ruled expressly that, absent a separate statute providing a cause of action or substantive rights, 28 U.S.C. § 1361 does not provide an independent basis for federal jurisdiction.  *See Mead Corp. v. United States*, 652 F.2d 1050, 1052 (D.C. Cir. 1981).

[9]       Plaintiffs cite to provisions from Title 25 Chapter 4 ("Performance by United States of Obligations to Indians"), Chapter 5 ("Protection of Indians"), Chapter 8 ("Rights-of-Way Through Indian Lands"), Chapter 12 ("Lease, Sale, or Surrender of Allotted or Unalloted Lands"), Chapter 23 ("Development of Tribal Mineral Resources"), and Chapter 42 ("American Indian Trust Fund Management Reform").  Plaintiff also cites to the Federal Oil and Gas Royalty Management Act of 1982, 30 U.S.C. §§ 1701 *et seq*.

a provision providing for a private right of action against the United States or Defendants here. Nowhere in the text of the 1994 Act does the statute authorize an independent lawsuit for violating its terms. Indeed, this Court and the D.C. Circuit Court of Appeals have already established that the proper cause of action for challenging Defendants' compliance with the 1994 Act is through the APA. *See Cobell V,* 91 F. Supp. 2d at 29, *aff'd in relevant part*, 240 F.3d at 1099, 1108.

Apparently mindful that this Court has explicitly *rejected* the notion that Plaintiff may maintain a common law action for breach of trust against the Government (*see Cobell V*, 91 F.Supp. 2d at 29 ("[t]o the extent that Plaintiffs seek relief beyond that provided by statute, their claims must be denied") Plaintiffs have previously asserted that the Supreme Court's decision in *Mitchell II* established that an independent cause of action to enforce trust duties is implied whenever federal statutes and regulations establish a trust relationship between the government and Indian tribes. *See* Plaintiffs' Joint Memorandum at 41-46. Plaintiffs misconstrue the Supreme Court's holding in *Mitchell II* . While the various "statutes and regulations" cited by Plaintiff may lead to the recognition of a specific fiduciary relationship between tribes and the United States, it does not follow that such a relationship establishes an *independent cause of action* for breach of trust. In *Mitchell II*, the Tucker Act and Indian Tucker Act supplied the necessary right or cause of action (i.e., authority for a court to provide redress), insofar as those statutes permit recovery of damages against the United States where a substantive statute or other source of law mandates compensation for the claims asserted. See 28 U.S.C. §§ 1491(a) (1), 1505. Because *Mitchell II* was decided under the Tucker Act and Indian Tucker Act, that decision and the many subsequent decisions finding jurisdiction in the Court of Federal Claims to remedy Indian breach of trust claims have no applicability to the claims filed with this Court. The only cause of action available to Plaintiffs, if

they choose to comply with its limits, remains the APA's general cause of action.

2.    Plaintiffs Have Not Properly Pled a Claim for Non-Statutory Review.

Just as Plaintiffs cannot demonstrate that the various statutes and regulations cited in their Complaints confer a private right of action for judicial review, they also cannot establish this Court's jurisdiction under any theory of non-statutory judicial review, because their claims do not involve agency conduct alleged to be *ultra vires*. The Supreme Court has carved out a narrow jurisdictional exception that allows judicial review of agency actions "in excess of delegated powers" or "contrary to a specific prohibition" in a statute. *See Leedom v. Kyne*, 358 U.S. 184, 188 (1958); *Griffith v. FLRA*, 842 F.2d 487, 492 (D.C. Cir. 1988) (citing *Leedom,* 358 U.S. at 188). The D.C. Circuit has emphasized that the invocation of *Leedom* jurisdiction is limited to a "clear violation of an unambiguous statutory provision." *Ass'n of Civilian Technicians, Inc. v. Federal Labor Relations Auth.*, 283 F.3d 339, 344 (D.C. Cir. 2002). The D.C. Circuit has analogized *Leedom* jurisdiction to the extraordinary jurisdiction of a court of appeals in a mandamus proceeding: "In both situations, the mere possibility that the decision being reviewed is erroneous is not sufficient to support jurisdiction. Rather, the party seeking relief must show that the court or agency which made the decision had no authority to do so." *Physicians Nat'l House Staff Ass'n v. Fanning,* 642 F.2d 492, 496 n.4 (D.C. Cir. 1980) (en banc).

A non-statutory review action is only available under a limited set of circumstances, which are not present in the instant cases. The D.C. Circuit has emphasized that "[t]here certainly is no question that nonstatutory review is 'intended to be of extremely limited scope.'" *Trudeau*, 456 F.3d at 190 (affirming dismissal for failure to state a claim upon which relief can be granted and holding that an infomercial producer failed to state APA, non-statutory, and First Amendment claims against

- 20 -

the Federal Trade Commission) (quoting *Griffith*, 842 F.2d at 493)).  For this jurisdiction to exist, an agency must "have stepped so plainly beyond the bounds of the [act in question], or acted so clearly in defiance of it, as to warrant the immediate intervention of an equity court . . . ."  *Fanning*, 642 F.2d at 496.  "That the [agency] may have made an error of fact or law is insufficient; the [agency] must have acted without statutory authority."  *Ass'n of Civilian Technicians, Inc*, 283 F.3d at 344 (annotation by D.C. Circuit) (citing *Fanning*, 642 F.2d at 496).

None of the limited circumstances under which non-statutory review is appropriate exists in the instant trust accounting cases.  The gravamen of the Complaints is that Defendants have failed to act in the manner that Plaintiffs aver is required, not that Defendants have acted beyond the limits of their authority.  *See, e.g.*, Salt River Pima-Maricopa Indian Community Compl. ¶¶ 20 (delineating Defendants' alleged failures to comply with fiduciary obligations); *id*. ¶ 28 (alleging that Defendants have failed to carry out the mandates of the 1994 Act).[10]  The Complaints do not allege that Defendants acted "contrary to a specific prohibition" that is "clear and mandatory."  *Leedom*, 358 U.S. at 188.  Actions taken by government agencies are not *ultra vires* merely because they are alleged, or even ultimately shown, to be unlawful.  *See Ass'n of Civilian Technicians, Inc.*, 283 F.3d at 344.  The D.C. Circuit has made it clear that the *Leedom v. Kyne* exception is confined to "agency error so extreme that one may view it as jurisdictional or nearly so."  *Griffith*, 842 F.2d at 493. Plaintiffs merely allege that Defendants have acted unlawfully, not that Defendants have acted beyond their powers.  Thus, an argument that Defendants have acted *ultra vires* cannot prevail and this Court lacks non-statutory review jurisdiction.

---

[10]      *See also* CRIT's Second Amend. Compl. ¶¶ 34, 37; Pechanga First Amend. Compl. ¶¶ 51, 55; Yankton Sioux Tribe's Compl. ¶¶ 26, 29; *and* Nez Perce Tribe's First Amend. Compl. ¶¶ 72, 77, 82.

For all of the above reasons, Plaintiffs have failed to establish a claim cognizable in this Court, and the Court should dismiss all of Plaintiffs' claims pled independently of the APA.

B.      Plaintiffs Fail to Properly Plead a Claim Under the APA.

Plaintiffs' desultory invocation of an APA cause of action is legally deficient, like their non-APA common law claims, and also should be dismissed. Plaintiffs primarily appear to assert a claim under Section 706(1) of the APA, 5 U.S.C. §706 (1), to compel agency action unlawfully withheld. Plaintiffs assert that the accounting and other agency action that they seek have been unduly delayed, and characterize their cases, *inter alia*, as requesting injunctive relief to compel Defendants to perform these duties (especially to prepare and provide accountings), relying, in large part, on the rulings in *Cobell v. Kempthorne* as to Defendants' accounting obligations. *See* Yankton Sioux Tribe Compl. ¶¶ 5, 21; Salt River Pima Maricopa Indian Community Compl. ¶ 9; CRIT Second Amend. Compl. ¶¶ 5, 25, 34; Pechanga First Amend. Compl. ¶¶ 6, 15, 25, 52; and Nez Perce Tribe First Amend. Compl. ¶¶ 5, 40, 53, 82. Several of Plaintiffs also inconsistently allege, usually in the very same sentences, that unspecified final agency action taken by Defendants is arbitrary and capricious under the APA. *See* Nez Perce First Amend. Compl. at ¶ 82, CRIT Second Amend. Compl. at ¶ 5. These allegations are apparently intended to state a claim under Section 706(2) of the APA, 5 U.S.C. §706(2), which in conjunction with Section 704 authorizes judicial review of final agency action.

As discussed below, Plaintiffs have failed to properly state a claim for relief under either Section 706(1) or 706(2) of the APA. With respect to their undue delay claim, Plaintiffs are not in the same position as the *Cobell* plaintiffs. There are specific statutory provisions in the 1994 Act that govern the accounting work required for Tribes, and the Interior Department has complied with those provisions. Moreover, the Supreme Court has clarified that only discrete, non-discretionary,

mandatory duties may be enforced through Section 706(1) of the APA, *Norton v. SUWA*, 542 U.S. 55, 61 (2004), and Plaintiffs have identified no such duty of that nature, either under the 1994 Act or any of the other statutes they cite.  Accordingly, Plaintiffs fail to state a claim under Section 706(1) of the APA.

Plaintiffs have also failed to state a claim under Section 706(2) of the APA.  They have identified no final agency action that they challenge.  Instead, they make broad allegations of malfeasance, impermissibly asking this Court for across-the-board protection and wholesale improvement to Interior's management of Tribal assets.  These types of broad programmatic challenges are not allowed under the APA.  *Lujan v. Nat'l. Wildlife Fed'n*, 497 U.S. 871, 891, 894 (1990).

1.    Plaintiffs Fail to State a Claim Under Section 706(1) of the APA to Compel Unduly Delayed Agency Action.

Plaintiffs' primary claim is that Defendants have unlawfully withheld an accounting of trust funds and trust assets for decades.  Congress has defined the scope of Defendants' historical accounting obligation for these Plaintiffs' trust accounts in Section 304 of the 1994 Act, however, thus putting these Tribal trust accounting cases on a different footing than the undue delay claim in *Cobell*.  Moreover, the Supreme Court has recently addressed the power of a district court to order an agency to take action unlawfully withheld under 5 U.S.C. § 706(1).  In *SUWA,* 542 U.S. 55 (2004), a unanimous Court held that a district court in an APA lawsuit could order an agency to take only a *discrete, non-discretionary* agency action required by law.  Plaintiffs have not alleged, and cannot allege, that any such action is owed to them. Hence, they fail to state a claim under Section 706(1) of the APA.

a.    As Clarified by the Supreme Court, Only Discrete, Non-

> Discretionary, Mandatory Duties May Be Enforced under Section
> 706(1) of the APA.

The defects in Plaintiffs' claims to compel unduly delayed agency action are readily apparent now that the Supreme Court has clarified the legal framework under which a viable claim may be stated under Section 706(1) of the APA. In *SUWA*, the plaintiff SUWA brought suit against the Bureau of Land Management ("BLM") for failing to comply with a directive in the Federal Land Policy and Management Act ("FLPMA") to manage certain public lands "in a manner so as not to impair the suitability of such areas for preservation as wilderness" (non-impairment mandate). *SUWA*, 542 U.S. at 58 (quoting 43 U.S.C. § 1782(c)). SUWA's lawsuit alleged, *inter alia*, that BLM was in violation of FLPMA's non-impairment mandate by allowing off-road vehicles ("ORVs") to degrade lands classified as wilderness study areas which were awaiting formal wilderness designation by Congress. *Id.* at 59. SUWA sought relief under Section 706(1) of the APA which allows a court to "compel agency action unlawfully withheld or unreasonably delayed," 5 U.S.C. § 706(1), where an agency has failed to act in accordance with a legal duty. *Id.* at 59-60. SUWA sought a declaration that BLM was in violation of the non-impairment mandate, and an injunction ordering compliance with the non-impairment mandate. *Id.* Although the district court dismissed these claims, a divided panel of the Court of Appeals for the Tenth Circuit held that the district court had jurisdiction to award this form of relief under the APA. *See Southern Utah Wilderness Alliance v. Norton*, 301 F.3d 1217 (10th Cir. 2002), *rev'd*, 542 U.S. 55 (2004).

Upon review, the Supreme Court unanimously rejected the Tenth Circuit's application of the APA for two principal reasons. First, the Court examined Section 702 of the APA, which limits judicial review to suits challenging "agency action" as it is defined in Section 551(13) of that statute. *Id.* at 62. The Court emphasized that the specific categories of "agency action" given in Section

- 24 -

551(13) all "involve circumscribed, discrete agency actions." *Id.* Applying this analysis to SUWA's

claims, the Court concluded that SUWA's challenges to BLM's alleged failure to manage wilderness

study areas in compliance with FLPMA's non-impairment mandate was not a challenge to "agency

action," as defined in the APA, but rather was a challenge to the continuing, day-to-day

administration of wilderness study areas by BLM. A challenge to such ongoing management

activities is not cognizable under the APA, the Court held, because day-to-day management is not

"discrete agency action," as defined in the APA. *Id.* at 67.

Second, and of equal importance to these Tribal trust accounting cases, the Supreme Court

held that Section 706(1) of the APA did not permit a court to award such relief for SUWA's non-

impairment claim, because only "*discrete* agency action that [an agency] is *required to take*" may

be compelled under Section 706(1). *Id.* at 64 (emphasis in original). Put differently, "the only

agency action that can be compelled under the APA is action legally *required*." *Id.* at 63 (emphasis

in original). Since nothing in FLPMA's non-impairment mandate specifies any particular "legally

required" action, the district court was without power under the APA to compel agency action. *Id.*

at 65-66. The Supreme Court noted that, although FLPMA's non-impairment mandate "is

mandatory as to the object to be achieved . . . it leaves BLM a great deal of discretion in deciding

how to achieve it." *Id.* at 66. Accordingly, a plaintiff cannot invoke Section 706(1) of the APA to

compel an agency to exercise its discretion in a certain way, because Section 706(1) "empowers a

court only to compel an agency to perform a ministerial or non-discretionary act." *Id.* at 64 (quoting

Attorney General's Manual on the Administrative Procedures Act 108 (1947)) (internal quotations

omitted). Accordingly, challenges to agency processes not amounting to agency action, as that term

is defined in the APA, are not within the scope of review under the APA. *Long Term Care*

*Pharmacy Alliance v. Leavitt*, 530 F. Supp. 2d 173, 185-88 (D. D.C. 2008).

> b.    The 1994 Act Created Specific, Time-Limited Historical Accounting Duties for Tribes, All of Which Have Been Completed, and, Therefore, No Claim for Unreasonable Delay May Be Asserted At This Juncture.

Applying *SUWA*'s principles to the cases at hand, it is evident that Plaintiffs have not and cannot state a claim that a non-discretionary, mandatory, discrete duty is owed to them and has been unduly delayed. As noted above, Plaintiffs' claims that a complete accounting has been unduly delayed mirror the claims made in the *Cobell* litigation. In that case, this Court has found that Section 102(a) of the 1994 Act[11] required the Secretary of the Interior to provide individual Indian IIM account holders with a complete historical accounting to insure that the opening balances in the accounts subject to the new reporting duty imposed by section 102(b) would be accurate. *Cobell V*, 91 F. Supp. 2d 1, 58 (D.D.C. 1999), *aff'd*, *Cobell VI*, 240 F.3d 1081, 1099 (D.C. Cir. 2001).

That *Cobell* ruling does not apply to these trust accounting cases, however, because, for Plaintiffs and other Tribes, any general accounting duty is controlled by the more specific provisions of Section 304 of the 1994 Act, 25 U.S.C. § 4044. Section 304 of the 1994 Act defines the process and timetable that Interior was obligated to use to reconcile, account for, and report the balance in tribal trust accounts in satisfaction of Congress's intention to obtain, to the extent practicable, reliable baseline balances in the Tribal accounts:

> The Secretary shall transmit to the Committee on Natural Resources of the House of Representatives and the Committee on Indian affairs of the Senate, by May 31, 1996, a report identifying for each tribal trust fund account for which the Secretary is responsible a balance reconciled as of September 30, 1995. In carrying out this section, the Secretary shall consult with the Special Trustee. The report shall

---

[11]    Section 102(a) of the 1994 Act contains a general duty to "account for the annual and daily balance of all funds held in trust . . . ." 25 U.S.C. § 4011(a).

include–

(1) a description of the Secretary's methodology in reconciling trust fund accounts;

(2) attestations by each account holder that–

> (A) the Secretary has provided the account holder with as full and complete accounting as possible of the account holder's funds to the earliest possible date, and that the account holder accepts the balance as reconciled by the Secretary; or

> (B) the account holder disputes the balance of the account holder's account as reconciled by the Secretary and statement explaining why the account holder disputes the Secretary's reconciled balance; and

> (C) a statement by the Secretary with regard to each account balance disputed by the account holder outlining the efforts the Secretary will undertake to resolve the dispute.

25 U.S.C. § 4044. Thus, with this section, Congress provided the specific means by which Interior was to satisfy its retrospective accounting obligations for tribal trust fund accounts. Section 304's specific reconciliation report requirement supersedes any historical accounting duties imposed on Interior by Sections 101 and 102 of the 1994 Act, and other law. *Morales v. TWA, Inc.*, 504 U.S. 374, 384-85 (1992) (It is a "commonplace of statutory construction that the specific governs the general."). By requiring Interior to identify a reconciled balance "for each tribal trust fund account for which the Secretary is responsible" by a date certain, and to explain its accounting and reconciliation methodology, Congress specifically resolved the timing and the methodology by which Interior would discharge the retrospective reconciliation and accounting obligations that the agency had for tribal trust fund accounts. Congress, through its enacted language, chose not to require the Interior Secretary to perform the sort of exhaustive, unlimited accounting that Plaintiffs seek herein; rather, Congress required the Secretary to use a more direct and conclusive approach to completing the historical accounting work necessary to reconcile the tribal trust balances as of

September 30, 1995.[10]

In satisfaction of Interior's obligations under Section 304, each of the Plaintiffs received in 1996 a report and statements of account from the Interior Department, identifying the balance of funds in each trust fund account for which the Interior Secretary was responsible, reconciled as of September 30, 1995. These reports, known as TRP reports, consisted of transaction by transaction account statements for each account for the period from July 1, 1972 (Fiscal Year 1973), to September 30, 1995 (Fiscal Year 1995), accompanied by (1) a report describing the procedures performed for the FY 1973 to FY 1992 period and the results thereof, and (2) electronic images of source documents that supported certain FY 1973 to FY 1992 transactions. *See* U.S. General Accounting Office, BIA's Trust Fund Account Reconciliation Results, GAO/AIMD-96-63 (May 1996), cited in Nez Perce First Amend. Compl. ¶ 42 and Salt River Pima Maricopa Indian Community Compl. ¶ 30.[11] Plaintiffs do not dispute having received Interior's reports and account statements produced pursuant to Section 304. Nez Perce Tribe First Amend. Compl. ¶¶ 6, 42-46.[12]

---

[10] Congress was well aware that imposing a deadline on Interior to complete its TRP would foreclose the opportunity to spend more time and money on historic reconciliation and accounting, but that was the choice that Congress consciously made, after considering the unlikely prospect of fully reconciling all transactions in all accounts in a cost-effective fashion (or at all). *See* U.S. General Accounting Office, Testimony on Native American Trust Fund Management Reform Legislation, at 4, GAO/T-AIMD-94-174 (1994) (regarding the Reconciliation Reporting Deadline, "[w]e support the Subcommittee's efforts to reach closure on this long standing problem"). Congress chose to bring the historic reconciliation of Tribal accounts to conclusion, with the full realization that Interior's TRP had several significant limitations, such as the facts that the TRP covered only Tribal accounts for a 20-year period (Fiscal Years 1973-1992) and that Interior did not expect to reconcile all transactions of all accounts, given the difficulties posed by time, funding, and the state of the records.

[11] Available at http://www.gao.gov/archive/1996/ai96063.pdf (last visited on June 15, 2008).

[12] *See also* Salt River Pima Maricopa Indian Community Compl. at ¶ 30, Ak-Chin Indian (continued...)

Importantly, these reports identified, as they were required to, a balance in each account reconciled as of September 30, 1995. Plaintiffs' claims here are thus fundamentally dissimilar to the claims in *Cobell,* insofar as Plaintiffs (and other Tribes) have already received Interior's TRP reports and decision on the reconciled opening balance in each of their trust accounts. Hence, Plaintiffs may not press their claims under Section 706(1) of the APA, under a theory of undue delay.[13]

        c.       <u>None of the Statutes Identified by Plaintiffs, Not Even the 1994 Act, Sets Forth Discrete, Non-Discretionary, Mandatory Accounting Duties That May Be Enforced under Section 706(1) of the APA.</u>

Putting aside any challenge to Defendants' compliance with Section 304 of the 1994 Act, Plaintiffs cannot point to any discrete, mandatory duty to account that could be the proper subject of an action under Section 706(1) of the APA. To the extent that the broad language in *Cobell VI* would indicate that such a duty exists under the 1994 Act, such an indication is no longer valid, given the Supreme Court's decision in *SUWA*.

In *Cobell VI*, the D.C. Circuit did not find an express duty to perform an historical accounting stated in the 1994 Act. Instead, it found an implied duty based on the requirement in Section 102(a) of the Act that the Interior Secretary account for "all funds held in trust," and concluding that the fiduciary duties owed by the federal government to Indians predated the 1994 Act and that the government's compliance with that duty had been unduly delayed. *See Cobell VI,*

---

[12]/(...continued)
Community Compl. at ¶ 30, Tohono O'odham Nation Compl. at ¶ 30, Passamaquoddy Tribe of Maine Compl. at ¶ 30, CRIT Second Amend. Compl. at ¶ 25, Pechanga First Amend. Compl. at ¶ 27, and Plaintiffs' Joint Memorandum In Opposition to Defendants' Motion For Remand and Stay of Litigation at 25.

[13]      Plaintiffs' undue delay theory does not succeed against the Secretary of the Treasury, another named Defendants, because none of the statutes invoked by Plaintiffs assigns to Treasury any obligation to perform the requested trust accountings.

- 29 -

240 F.3d at 1102. Three years after the ruling in *Cobell VI,* the Supreme Court addressed in *SUWA* the power of a district court to order an agency to take action unlawfully withheld, *i.e.*, the very basis of the court's jurisdiction in *Cobell VI.* In *SUWA*, the Supreme Court unanimously held that, in a suit to compel agency action unlawfully withheld, the action to be compelled must be final agency action and that "the only agency action that can be compelled under the APA is action legally *required*." 542 U.S. at 62-63 (emphasis in the original). Put another way, the Supreme Court clarified that Section 706(1) "empowers a court only to compel an agency to perform a ministerial or non-discretionary act." *Id.* at 64 (internal quotations omitted).

The accounting duty in Section 102(a) of the 1994 Act is neither ministerial nor non-discretionary. That section states:

> (a) Requirement To Account.– The Secretary shall account for the daily and annual balance of all funds held in trust by the United States for the benefit of an Indian tribe or an individual Indian which are deposited or invested pursuant to the Act of June 24, 1938.

25 U.S.C. § 4011. What the section does not state as obligatory is a historical accounting of Tribal trust funds held before the 1994 Act was passed. Similar to the broad statutory provision at issue in *Norton v. SUWA*, Section 102(a) of the Act "is mandatory as to the object to be achieved, but it leaves the . . . [Department] a great deal of discretion in deciding how to achieve it." *SUWA*, 542 U.S. at 66. For example, Section 102(a) does not specify to whom and when the Secretary must report the accounting, how much reconciliation must occur, or other aspects of the requested historical accounting. If courts are prohibited from entering general orders directing agencies to follow the law prospectively, as *SUWA* makes clear, they are likewise not empowered to enter a broad order, observing in retrospect that an agency failed to implement a law and ordering it to take actions that the Court believes are proper, where such actions are not stated in the statute as a

- 30 -

"specific, unequivocal command . . . . ordering a precise, definite act about which an official had no discretion whatever." *SUWA*, 542 U.S. at 63 (internal quotations and citations omitted)

Additionally, Section 102(a) of the 1994 Act, which establishes the accounting requirement, does not require any kind of final agency action that would be recognized under the APA.[14]  First, it does not expressly or unambiguously legislate that Interior provide the accounting to anyone in particular.  This is in contrast to Section 102(b), which requires a statement of performance to be provided "to each Indian tribe or individual" account holder.  Moreover, the duty to account is an ongoing and daily obligation that Interior keep an accurate account of the balances of funds and cash in the trust fund accounts.  *See, e.g.,* 25 U.S.C. § 162a(d).  In this respect, the duty to account can be viewed as a programmatic requirement, like the wilderness non-impairment standard in *SUWA,* or the duty to inventory lands in *Utah v. Babbitt*, 137 F.3d 1193 (10th Cir. 1998).

An agency's failure to meet an express statutory deadline is, of course, a classic example of the sort of duty whose performance may be compelled under Section 706(1).  *SUWA*, 542 U.S. at 65 ("Thus, when an agency is compelled by law to act within a certain time period, but the manner of its action is left to the agency's discretion, a court can compel the agency to act, but has no power to specify what the action must be.")  But when the statute presents daily obligations, such as in Section 102(a) of the 1994 Act, those obligations can only be read as a programmatic requirement.  To read the statute otherwise would necessarily require "injecting the judge into day-to-day agency management" and run afoul of the limits to judicial review under Section 706(1) of the APA.  *Id*. at 67.

---

[14]    The APA defines "agency action" as an "agency regulation, order, license, sanction [or] relief."  5 U.S.C.§ 551(13).

Comparing Section 102 (a) with Section 102(b), which, in Defendants' view, does establish a discrete agency action requirement, is also illuminating. Section 102(b) provides:

> (b) Periodic Statement of Performance.– Not later than 20 business days after the close of a calendar quarter, the Secretary shall provide a statement of performance to each Indian tribe and individual with respect to whom funds are deposited or invested pursuant to the Act of June 24, 1938. The statement, for the period concerned, shall identify
>
> > (1) the source, type, and status of the funds;
> > (2) the beginning balance;
> > (3) the gains and losses;
> > (4) receipts and disbursements; and
> > (5) the ending balance.

25 U.S.C. § 4044(b). This section specifies to whom and when a statement of performance ("SOP") must be provided. It specifies that a SOP is to be provided to each tribe and individual. It specifies the time period to be covered by each SOP and most certainly does not require SOPs back to 1938 because it would not be a logical reading for Congress to require in 1994 an SOP within 20 business days of June 24, 1938. Additionally, Section 102(b) would result in an "agency action" within the meaning of the APA.[15]

In *Cobell VI,* the D.C. Circuit had trouble reconciling two doctrines of law that have now been clarified by *SUWA.* Those doctrines are the court's authority under the APA to compel agency action unlawfully withheld, and the proper application of the Indian trust, including application of the Indian canon of construction. In subsequent *Cobell* decisions, the D.C. Court of Appeals has come to an increasing awareness of the limits placed on the judicial branch by administrative law

---

[15] A periodic statement of performance would constitute an agency "order" and, therefore, meet the APA's definition of agency action. "Order" means "the whole or a part of a final disposition, whether affirmative, negative, injunctive, or declaratory in form, of an agency in a matter other than rule making." 5 U.S.C. § 551(6).

even in the Indian trust context, which it has described and applied those limits in vacating three separate district court injunctions that were submitted for review.

First, in *Cobell XIII*, 392 F.3d 461, 477 (D.C. Cir. 2004), the D.C. Circuit vacated an injunction requiring Interior to take numerous steps both in historical accounting and in "fixing the [IIM trust management] system." *Cobell XIII* did not apply the precepts of *SUWA* to the historical accounting aspects of the injunction because it found those aspects contrary to an Act of Congress temporarily suspending any duty to account. *Cobell XIII*, 392 F.3d at 466. The Court of Appeals did apply *SUWA* to other portions of the injunction and vacated all but one element of the "fixing the system" injunction, because it concluded the district court had engaged in impermissible programmatic review, rather than considering specific claims that Interior breached particular statutory trust duties. *Cobell XIII*, 392 F.3d at 469.

A year later, in *Cobell v. Norton,* 428 F.3d 1070 (D.C. Cir. 2005)(*Cobell XVII*), the D.C. Circuit vacated a second injunction "dictating how Interior must fulfill its obligation to complete an accounting for the IIM trust" in part, because the Court had "erroneously displaced Interior as the actor with primary responsibility for working out compliance with the broad statutory mandate." *Cobell XVII*, 428 F.3d at 1076-77 (quoting *SUWA*). This decision directly applied *SUWA* to the specific order on appeal. Although the Court of Appeals recognized that the 1994 Act "clearly reaffirms the requirement that the Secretary complete an accounting," the accounting duty, nonetheless, was not specific enough to mandate production of the particular form of accounting that the district court had read into the 1994 Act. *Id.* at 1074.

In its most recent decision in *Cobell v. Norton,* 455 F.3d 301 (D.C. Cir. 2006)(*Cobell XIX*), the D.C. Circuit vacated this Court's preliminary injunction, requiring that certain computer systems

- 33 -

be disconnected from the Internet.  The *Cobell XIX* decision noted carefully not only the limits on

its jurisdiction posed by, *inter alia*, the Supreme Court's decision in *SUWA* but also the application

of those limits in the prior two appellate decisions discussed above.  *Cobell XIX,* 455 F.3d at 305.

*Cobell XIX* took care to avoid the question of whether the Federal Information Security Management

Act required any specific action by the federal government or whether such actions would be

judicially reviewable.  *Cobell XIX*, 455 F.3d at 305-07, 314.

    Given these *Cobell* decisions, it is clear that *SUWA* imposes real limits on this Court's

authority to compel Defendants to produce the agency actions that have been sought by Plaintiffs.

All three decisions take care to point out that the Court's "jurisdiction is limited to addressing

specific agency action or inaction."  *Cobell XIX*, 455 F.3d at 307.

    Section 102(a) of the 1994 Act contains a general duty to "account for the annual and daily

balance of all funds held in trust . . ."  25 U.S.C. § 4011(a).  Section 102(a) does not say to whom

or how far back, or to what degree of reconciliation, or require any final agency action relating to

historical accountings.  Based on ambiguities in the requirement "to account" in Section 102(a), the

court in *Cobell* resorted to the common law of trusts and Indian canon of construction[16] to interpret

this requirement favorably to Indian trust beneficiaries and filled in the blanks itself in terms of to

whom, how far back and the degree of reconciliation required.  *Cobell VI, supra.*  By relying on

ambiguities in the statute as the basis for implying duties that do not expressly appear in the statute,

---

[16]    The Indian canon of construction is that "statutes are to be construed liberally, in favor of
Indians, with ambiguous provisions interpreted for their benefit."  *Cobell VI,* 240 F. 3d 1081, 1101,
(D.C. Cir. 2001) (citing *Montana v. Blackfeet Tribe of Indians*, 471 U.S. 759, 766 (1985)). "The
canon of construction regarding the resolution of ambiguities in favor of Indians, however, does not
permit reliance on ambiguities that do not exist; nor does it permit disregard of the clearly expressed
intent of Congress." *South Carolina v. Catawba Indian Tribe, Inc.*,  476 U.S. 498, 506 (1986).

the *Cobell* court wrongly found a specific enforceable requirement to complete an accounting that it thought it had jurisdiction to enforce.  *Id.*  This finding is contrary to *SUWA,* which limits the reach of Section 706(1) to the enforcement of a discrete final agency action.

Given the *SUWA* decision, this Court may no longer rely upon presumptions in the 1994 Act to supply the basis for an obligation for Defendants to complete a specific form of accounting, as none of the necessary details about the agency action found to be  required in *Cobell VI* (or even *Cobell XX*) appears in the text of the statute.  After *SUWA*, in an action to compel a final agency action required by law, ambiguities in a substantive statute are better understood as reasons that a Court lacks the authority to compel performance of the duty, rather than an invitation to supply interstitial rules of law to particularize a mandatory, but general and ambiguous statutory command.  Rather, in a suit for unlawful withholding of agency action, any vagueness or ambiguity in the applicable statute goes to whether there is a sufficiently discrete requirement under *SUWA*.

In light of the analysis prescribed by *SUWA* for ascertaining the limits of a court's authority under Section 706(1) of the APA, Plaintiffs' claim to compel an accounting must fail because Plaintiffs do not and cannot allege any discrete mandatory final agency action that Defendants have failed to take.  The provisions of the 1994 Act relied upon in *Cobell* do not impose upon Defendants the discrete ministerial obligation to complete an accounting in the fashion that Plaintiffs allege.

2.    Plaintiffs Have Failed to Plead a Proper Claim Under Section 706(2) of the APA.

Under the APA, "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review." 5 U.S.C. § 704.  To adequately allege a claim under the APA, a plaintiff "must direct its attack against some particular 'agency action' that causes it harm."  *Lujan v. National Wildlife Federation*, 497 U.S. 871,

891 (1990).  As discussed *supra*, the few and cursory allegations in the Complaints regarding the APA fail to satisfy Plaintiffs' pleading burden to allege a claim under Section 706(2) of the APA. "Plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1965 (2007) (internal quotations omitted).  It is not sufficient to do as the Nez Perce Tribe and CRIT have done, *i.e.*, merely allege that unspecified final agency action "is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law."  *See* CRIT Second Amend. Compl. ¶ 5; Nez Perce First Amend. Compl. ¶ 82.  The other Plaintiffs do not even go so far in framing a claim for review of final agency action under Section 706(2) of the APA.  For example, the Yankton Sioux Tribe and Pechanga have merely alleged in their Complaints that theirs is an action under 5 U.S.C. §§ 702 and 706 to compel federal officials to perform a duty.  *See* Yankton Sioux Tribe Compl. ¶ 5; Pechanga First Amend. Compl. ¶ 6.  Those Complaints, though long on allegations about Defendants' programmatic failures, have failed to target any specific "agency action" for review.  Hence, their claims are not reviewable by this Court.

Plaintiffs' failure to specify a focus for judicial review is not surprising, given Plaintiffs' express position that their cases may not be characterized as an administrative law matter governed by the APA (even though their position seemingly conflicts with the few APA references in their Complaints).  At least four of the Plaintiffs have taken the view that it is essentially up to Defendants to specify the final agency action for review.  *See e.g. Ak-Chin Indian Community v. Kempthorne* Joint Report Pursuant to Fed. R. Civ. P. 26(f) and Local Civil Rule 16.3 and Plaintiff's Proposed Case Management and Phase One Scheduling Order at 17 (Dkt. No. 12) ("Accordingly, the Case Management Order proposed by the Plaintiff-Beneficiary would require in the first instance that

Trustee-Delegates . . . . specify . . . . which of the produced items (if any) they contend constitutes a complete and accurate accounting of all trust assets belonging to Plaintiff-Beneficiary as required by law.")   The same positions were taken by the Tohono O'odham Nation, Passamaquoddy Tribe and Salt River Pima Maricopa Indian Community.[17] Plaintiffs' positions are wrong, and,++ because Plaintiffs fail to identify the final agency action they choose to challenge, the APA's waiver of sovereign immunity is inapplicable.

The Court should hold Plaintiffs to their burden of focusing these cases sufficiently for judicial review under the APA. *See Colorado Farm Bureau Fed'n v. U. S. Forest Serv*., 220 F.3d 1171, 1173 (10th Cir. 2000) ("Plaintiffs have the burden of identifying specific federal conduct and explaining how it is 'final agency action' within the meaning of section 551(13).") (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. at 882; *Catron County v. U.S. Fish & Wildlife,* 75 F.3d 1429, 1434 (10th Cir. 1996). Failures in Plaintiffs' pleadings may constitute grounds for dismissal, especially when Plaintiffs do not specify the agency action to be reviewed. *Karst Environmental Educ. and Protection, Inc. v. E.P.A.,* 475 F.3d 1291, 1298-99 (D.C. Cir. 2007) ("Because Karst has failed to allege that either EPA or HUD engaged in final agency action, we shall affirm the district court's dismissal of the complaint against those two agencies."); *Tulare County v. Bush*, 306 F.3d 1138, 1143 (D.C. Cir. 2002) ("Although Tulare County refers to the existence of foresters on the ground, the complaint does not identify these foresters' acts with sufficient specificity to state a claim."); *San Carlos Apache Tribe v. United States*, 272 F.Supp.2d 860, 886 (D. Ariz. 2003) ("Plaintiffs fail to

---

[17]     While not specifically asserting this claim in its Complaint, the Yankton Sioux Tribe, in its Rule 26 Report, adopted the position taken by Tohono O'odham Nation, Passamaquoddy Tribe and Salt River Pima Maricopa Indian Community in their Rule 26 Reports.  *See* Yankton Sioux Rule 26 Report at 1-2 (Dkt. No. 52).

identify the final agency action that is reviewable under the APA, relevant to the alleged statutory violations.")

The most obvious final agency action correlating to Plaintiffs' claims is Interior's production of account statements and identification of fund balances, in satisfaction of its obligations under Section 304 of the 1994 Act, *i.e.*, what Plaintiffs call the "Arthur Andersen Reconciliation Reports" or the TRP reports. Plaintiffs do not appear to challenge whether such reports by Interior complied with Section 304. Rather, Plaintiffs assert that the TRP reports under Section 304 fail to satisfy the more stringent common law accounting duties that they read into a host of other statutes and sources of law.[18] In the *Cobell* litigation, the Court found that Section 102(a) of the 1994 Act required the Secretary of the Interior to provide individual Indian IIM account holders with a complete historic accounting to insure that the opening balances in the accounts subject to the new reporting duty imposed by Section 102(b) would be accurate. *Cobell V*, 91 F. Supp. 2d at 58, *aff'd*, *Cobell VI,* 240 F.3d at 1099. The undisputed facts that Interior reported to Congress in 1996, as required by Section 304, and that Interior provided TRP reports to Plaintiffs and other Tribes, distinguish these Tribal trust accounting cases from the *Cobell* litigation. Plaintiffs' efforts and allegations seeking to align their cases with *Cobell* and to compel allegedly unduly delayed accountings should be dismissed as an impermissible attempt at an "end run" around the APA's final agency action requirement. Plaintiffs do not allege that Interior's actions in satisfaction of its obligations under Section 304 are contrary to that statute. Nor do Plaintiffs identify any other final agency action taken by either

---

[18]    The Pechanga Band references the TRP in regards to appropriations riders allegedly limiting the application of the statute of limitations. *See* Pechanga First Amend. Compl. ¶ 53.

Interior or Treasury subject to review under Section 706(2) of the APA.[19]  Thus, they fail to state a claim under Section 706(2) and such claims, to the limited extent they even appear in the Complaints, should be dismissed.

      C.     <u>Plaintiffs' Claims for Monetary Relief, Thinly Veiled as Equitable Claims, Must Be Dismissed.</u>

In these cases, Plaintiffs seek much more than an accounting of their trust funds and underlying non-monetary assets.  They also seek to be compensated for the alleged mismanagement of their trust funds by having their account balances corrected or restated.

This Court is without jurisdiction to entertain Plaintiffs' claims, because the claims are but a transparent attempt to have this Court provide an impermissible monetary award.  The waiver of sovereign immunity under which Plaintiffs have brought their suits, Section 702 of the APA, contains two separate conditions, each of which separately serves to deprive this Court of jurisdiction to award Plaintiffs monetary relief.  First, Section 702 waives immunity only for "relief other than money damages, 5 U.S.C. § 702, and Plaintiffs cannot avoid this limitation through artful pleading.  Second, Section 702 does not apply "if any other statute that grants consent to suit explicitly or implicitly forbids the relief which is sought."  *Id.*  The Tucker Act and Indian Tucker Act, 28 U.S.C. §§ 1491, 1505, are precisely those types of statutes.  Together, the two statutes provide the CFC with exclusive jurisdiction over Tribal breach of trust claims alleging that statutes or regulations mandate compensation.  *See Mitchell II*, 463 U.S. 206, 211-12.  Thus, the monetary compensation sought by Plaintiffs here cannot be heard by this Court.

---

[19]     In the event that any of Plaintiffs can and do state a cognizable trust accounting claim under the APA after the Court has ruled on this motion, Defendants intend to bring a dispositive motion based on the statute of limitations and any other applicable defenses against that claim at that time.

1.    Plaintiffs' Demand for a "Restatement" of Account Balances, Disgorgement, Restitution, or Other Equitable Relief Is Actually an Impermissible Demand for a Monetary Reward.

Despite wording their requested relief in a way that sounds equitable in nature, Plaintiffs cannot avoid the reality that they seek monetary relief as a primary object of their claims in these Tribal trust accounting cases.  The Nez Perce Tribe's case seeks "a mandatory injunction compelling Defendants to correct Plaintiffs' trust fund account balances [sic] make the accounts whole as if there had been no breaches of trust, negligence, or wrongdoing by Defendants up to and including the date of entry of final judgment in this action."  Nez Perce Tribes' Compl. at 29.  The Tohono O'odham Nation, along with the other three Tribes represented by the same counsel, seek a "decree providing for the restatement of the Nation's trust fund account balances in conformity with this accounting, as well as any additional equitable relief that may be appropriate (e.g., disgorgement, equitable restitution . . . .)"  Tohono O'odham Nation Compl. at 18.[20]

Plaintiffs' theory presumably is that a substantial amount of money has been collected by the federal government, and that the lack of proper accounting has prevented accurate distribution, record-keeping, and management of the revenues.  Plaintiffs would have this Court compel Defendants to produce a detailed and extensive accounting not required by law, and then review that accounting so as to ascertain and declare any errors in the balance of funds in the accounts shown by the accounting work.  Plaintiffs' express goal is to obtain a judgment in the form of restated

---

[20]    While the other Complaints at issue in this motion—filed by the Yankton Sioux Tribe, CRIT, and Pechanga—do not expressly seek monetary relief, their Complaints do seek open-ended and unspecified "other relief."  *See* Pechanga's First Amend. Compl. ¶ 6; CRIT's Second Amend. Compl. ¶ 4.  Moreover, these Tribes have concurred that their claims are essentially identical with the other Plaintiffs here.  *See* Plaintiffs' Joint Memorandum In Opposition to Defendants' Motion for Remand and Stay of Litigation at 3, n.1 and 35-36 ("Plaintiff- Beneficiaries' Claims"); *see also* Yankton Sioux Rule 26 Report at pp. 1-3.

accounts that would entitle them to money from Defendants.

2.    The United States Has Not Waived its Sovereign Immunity for Thinly Disguised Monetary Claims in the District Court.

The waiver of sovereign immunity relied upon by Plaintiffs, Section 702 of the APA, is limited to claims "seeking relief other than money damages." 5 U.S.C. §702. This waiver must be "strictly construed, in terms of its scope, in favor of the sovereign." *Dep't. of Army v. Blue Fox, Inc.*, 525 U.S. 255, 261 (1999) (citing *Lane v. Peña,* 518 U.S. 187, 192 (1996) (citing cases); *Library of Congress v. Shaw,* 478 U.S. 310, 318 (1986)). As part of this strict construction, the Supreme Court has emphasized that the prohibition on seeking money damages cannot be circumvented by artful pleading: "Almost invariably . . . suits seeking (whether by judgment, injunction, or declaration) to compel the defendant to pay a sum of money to the plaintiff are suits for 'money damages,' as that phrase has traditionally been applied, since they seek no more than compensation for loss resulting from the defendant's breach of legal duty." *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 210 (2002) (quoting *Bowen v. Massachusetts*, 487 U.S. 879, 918-19 (1988) (Scalia, J., dissenting)). *See also Consol. Edison Co. v. United States*, 247 F.3d 1378, 1385 (Fed. Cir. 2001) (en banc) ("A party may not circumvent the [CFC's] exclusive jurisdiction by framing a complaint in the district court as one seeking injunctive, declaratory or mandatory relief where the thrust of the suit is to obtain money from the United States.") (citing *Eagle-Picher Indus., Inc. v. United States,* 901 F.2d 1530, 1532 (10th Cir. 1990) (quoting *Rogers v. Ink,* 766 F.2d 430, 434 (10th Cir. 1985)).

Under the Supreme Court's jurisprudence, federal district courts have jurisdiction under Section 702 of the APA to award money in only one limited and unusual situation: where specific relief is sought to enforce a statutory mandate "which happens to be one for the payment of money."

- 41 -

*Bowen*, 487 U.S. at 900.  In *Bowen*, the Court held that a suit is for "money damages," *i.e.*, not maintainable under Section 702 of the APA, if it seeks a monetary remedy as "compensation for an injury" or otherwise requests money to "substitute" for a legal duty that the government breached. *Id.* at 893-95.  A district court retains jurisdiction under Section 702, however, if the payment of money is "specific relief" that "give[s] [the claimant] the very thing to which he was entitled" by the applicable statute in the first instance.  *Id*. at 895 (internal quotation marks omitted).[21/]

Since *Bowen*, the Supreme Court has reaffirmed that the "specific relief" exception is indeed narrow.  In *Blue Fox*, the Court held that an action to enforce an equitable lien does not come within the specific-relief exception, because a lien is merely the means to satisfy a money damages claim. The Court rejected the plaintiff's argument that Section 702 provided jurisdiction because the claimed relief was equitable in nature:

> [T]he crucial question under § 702 is not whether a particular claim for relief is "equitable" (a term found nowhere in § 702), but rather what Congress meant by "other than money damages" (the precise terms of § 702). *Bowen* held that Congress employed this language to distinguish between specific relief and compensatory, or substitute, relief.

*Blue Fox*, 525 U.S. at 261.

Plaintiffs' claims for monetary relief in these Tribal trust accounting cases cannot fit within the waiver of immunity in Section 702, because, unlike the plaintiff in the *Bowen* case, there is no

---

[21/]    In *Bowen*, HHS had issued an order declining to reimburse Massachusetts for certain expenses under its Medicaid Program, and the state brought suit seeking to "set aside" that order. The Court held that the suit did not seek "money damages."  Rather, the Court held, the Medicaid statute expressly imposed a money-payment mandate, declaring that the Secretary "shall pay" certain sums when specified conditions are met.  487 U.S. at 900.  Consequently, the state did not seek "money in compensation for the damage sustained by the failure of the Federal Government to pay as mandated;  rather, it [sought] to enforce the statutory mandate itself, which happens to be one for the payment of money."  *Id*.

statutory mandate in these Tribal trust accounting cases that requires the payment of the monies or the restitution, disgorgement, or other monetary remedy that Plaintiffs seek here. Plaintiffs' basic claim in the trust accounting cases is "framed as an action in equity for judicial enforcement of the fiduciary duties of a trustee that arise from the trust relationship between Plaintiff-Beneficiaries and Trustee-Delegates established by federal law." *See, e.g.,* Salt River Compl., ¶¶ 9, 16, and Plaintiffs' Joint Memorandum In Opposition to Defendants' Motion for Remand and Stay of Litigation at 43. Although Plaintiffs point to a host of statutes and regulations, none of them requires or authorizes Defendants to pay Plaintiffs money in the same way that the State of Massachusetts in *Bowen* was entitled to specific monetary amounts under the Medicaid program. Another key distinction between these cases and *Bowen* is that none of these cases present the same need for prospective relief to prevent future underpayments as was found necessary in *Bowen*. The necessity for that prospective injunctive relief was an important determinant of the outcome in *Bowen*. *Great West Life & Annuity Ins. Co.*, 534 U.S. at 212.

Recently, the CFC, in considering a motion to dismiss Plaintiff Tohono O'odham's Indian Tucker Act suit pursuant to 28 U.S.C. § 1500, examined the issue of whether the monetary relief simultaneously sought by Plaintiff in this Court (under the rubric of equitable restitution) and in the CFC (under the rubric of damages) was "in substance" the same. The CFC concluded that the relief was indeed the same, and that it could make Plaintiff whole. *See Tohono O'odham Nation v. United States*, 79 Fed. Cl. 645, 659 (Fed. Cl. 2007), *see also Ak-Chin Indian Community v. United States,* 80 Fed.Cl. 305, 321 (Fed. Cl. 2008) ("Plaintiff's argument that it does not seek to recover any money damages in the District Court, controverts the plain language of its District Court complaint.") (internal quotes omitted). As explained in *Tohono O'odham*, "the means for proving breach and

- 43 -

financial injury [in the CFC] would be the same as in the district court." 79 Fed. Cl. at 658.  Hence, as two CFC decisions reviewing the very same Complaints pending before this Court have found, there is no meaningful distinction that may be drawn between the asserted injunctive and declaratory relief sought in these cases and damages.  *Cf. Tohono O'odham Nation* and *Ak-Chin Indian Community.*

The fact that Plaintiffs seek impermissible monetary relief is also evident when viewed under the analytical framework provided by the D.C. Circuit in *City of Houston v. HUD*, 24 F.3d 1421 (D.C. Cir. 1994).  In that case, the City of Houston sought to recover funds from a block grant awarded by the Department of Housing and Urban Development for a particular fiscal year, even though the appropriation for that fiscal year had lapsed.  In dismissing Houston's complaint, the Court of Appeals rejected Houston's argument that it merely sought equitable relief to recover wrongly withheld funds.  *City of Houston,* 24 F.3d at 1430.  In finding that the City was not seeking "the very thing" to which it was entitled, the Court of Appeals recognized that specific relief of that nature necessarily requires the existence of a specific *res:*

> Section 702 permits monetary awards only when, as in *Bowen*, such an award constitutes specific relief – that is, when a court orders a defendant to pay a sum out of a specific *res*.  *See generally Hubbard v. EPA*, 982 F.2d 531 (D.C. Cir. 1992) (en banc) (holding that back pay does not constitute specific relief available under APA Section 702).  An award of monetary relief from any source of funds other than the 1986 [Block Grant] appropriation would constitute money damages rather than specific relief, and so would not be authorized by APA Section 702.

*Id.* at 1428.

Similarly, Plaintiffs' request in this case for a restatement of their account balances based on a breach of trust theory fails, because there is no specific *res* with which Defendants could adjust Plaintiffs' accounts.  *See, e.g.*, Consolidated Appropriations Act, 2008, Pub. L. No. 110-161, 121

Stat. 1844, 2115-16 ("Provided further, That not to exceed $50,000 is available for the Secretary [of the Interior] to make payments to correct administrative errors of either disbursements from or deposits to Individual Indian Money or Tribal accounts after September 30, 2002.") Money that was never credited to Plaintiffs' accounts or money that was wrongfully disbursed from Plaintiffs' accounts, cannot constitute specific relief, because neither derives from a specific fund or *res* existing within the federal government. Seen in this light, the Complaints in these Tribal trust accounting cases seek impermissible monetary relief under the analysis of *City of Houston*.[22] Accordingly, this Court should hold that it is without jurisdiction under Section 702 of the APA to provide Plaintiffs the monetary relief that they seek.

        3.      <u>The Waiver of Sovereign Immunity in Section 702 of the APA Does Not Apply, Because the Indian Tucker Act Impliedly Forbids the Award of Money.</u>

All of the Complaints in these Tribal trust accounting cases allege breaches of trust and breaches of fiduciary duty by Defendants. Further, they seek, in some fashion, to have this Court (1) compel Defendants to complete a comprehensive accounting; (2) review those accountings so as to ascertain shortcomings in Defendants' handling of trust account transactions; and (3) adjust Plaintiffs' trust account balances to remedy any shortfalls. Whatever the specific alleged breach of trust may be, Plaintiffs claim the right to recover money as an equitable remedy for such a breach. This Court does not have jurisdiction to entertain Plaintiffs' breach of trust claims seeking monetary

---

[22]     In resolving the Section 702 issue in *Cobell*, this Court relied on representations by the *Cobell* plaintiffs that they "sought only an accounting, not a cash infusion" into the IIM accounts. *Cobell v. Babbitt*, 30 F. Supp. 2d 24, 38-39 (D.D.C. 1998). The Court characterized the possibility of a future monetary claim as "hypothetical." 91 F. Supp. 2d at 27. Here, unlike *Cobell*, some Plaintiffs expressly seek "disgorgement" or "restitution" or a "restatement" as the ultimate end of their cases.

relief as part of a review of Interior's accountings, especially Interior's account statements and fund balances for the Tribal trust accounts.

The APA's waiver of sovereign immunity in Section 702 is not available "if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought." 5 U.S.C. § 702. The Tucker Act and Indian Tucker Act, 28 U.S.C. §§ 1491 and 1505, are statutes that implicitly forbid this Court from providing any type of monetary relief for alleged breaches of trust. In fact, the legislative history of Section 702 specifically cites the Tucker Act, 28 U.S.C. § 1491(a), as an example of a statute that "impliedly forbids" relief under the APA. *See* H.R. Rep. No. 94-1656 (1976), *reprinted in* 1976 U.S.C.C.A.N. 6121, 6133. Thus, if Plaintiffs' claims fall within the jurisdictional scope of the Tucker Acts, a Section 702 claim cannot proceed in the district court.[23]

In these Tribal trust accounting cases, Plaintiffs' claims for equitable monetary relief based on alleged breaches of trust necessarily arise under the Tucker Acts. The Supreme Court has held in the context of Tribal breach of trust claims that the Tucker Acts provide the jurisdiction and waiver of sovereign immunity needed to hear such claims: "[T]here is simply no question that the Tucker Act provides the United States' consent to suit for claims founded upon statutes or regulations that create substantive rights to money damages." *Mitchell II*, 463 U.S. at 218, *see also Eastport S. S. Corp. v. United States*, 372 F.2d 1002, 1007 (Ct.Cl. 1967) ("[T]he non-contractual claims we consider under Section 1491 can be divided into two somewhat overlapping classes-those in which the plaintiff has paid money over to the Government, directly or in effect, and seeks return of all or part of that sum; and those demands in which money has not been paid but the plaintiff

---

[23]    The same result obtains if these cases were analyzed under Section 704 of the APA, 5 U.S.C. § 704, which limits review to "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court."

asserts that he is nevertheless entitled to a payment from the treasury.")  Accordingly, to the extent

that Plaintiffs can state a claim for equitable monetary relief based on breach of trust, that claim falls

within the scope of the Tucker Acts and must be heard by the CFC.  *See Suburban Mortgage v.*

*HUD*, 480 F.3d 1116 (Fed. Cir. 2007) ("We have cautioned litigants that dressing up a claim for

money as one for equitable relief will not remove the claim from Tucker Act jurisdiction and make

it an APA case.").

      The application of the foregoing principles by the D.C. Circuit in the context of contractual

claims is instructive here.  The D.C. Circuit has held in contract cases that the Tucker Act is a statute

that forbids relief, and that consequently all claims premised on contracts—regardless of whether

the plaintiff seeks damages, specific performance, quantum meruit relief, or something else—are

"impliedly forbid[den]" under the APA.  *See, e.g., Albrecht v. Comm. on Employee Benefits*, 357

F.3d 62, 68 (D.C. Cir. 2004) ("the Tucker Act 'impliedly forbids – in APA terms – not only district

court awards of money damages, which the Claims Court may grant, but also injunctive relief, which

the Claims Court may not.'") (quoting *Transohio Sav. Bank v. Dir., OTS*, 967 F.2d 598, 609 (D.C.

Cir. 1992)); *Sharp v. Weinberger*, 798 F.2d 1521, 1524 (D.C. Cir. 1986) ("We know of no case in

which a court has asserted jurisdiction [under the APA] either to grant a declaration that the United

States was in breach of its contractual obligations or to issue an injunction compelling the United

States to fulfill its contractual obligations."); *see also Christopher Village, L.P. v. United States*, 360

F.3d 1319, 1327-29, 1332-33 (Fed. Cir. 2004) (Fifth Circuit lacked jurisdiction to issue a declaratory

judgment as to HUD's liability on a contract, even as a predicate for a damages action in the CFC,

because the APA does not waive the government's immunity from such a claim); *Katz v. Cisneros*,

16 F.3d 1204, 1209 (Fed. Cir. 1994) ("[W]here contract damages are available in the Court of

- 47 -

Federal Claims, the Tucker Act forbids specific performance or declaratory relief under its terms and thus impliedly forbids such relief via the APA").

Of course, the Tucker Act covers not only claims on contracts, but also "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department." 28 U.S.C. § 1491(a). As discussed above, the Supreme Court has recognized that the Tucker Act, and its companion statute, the Indian Tucker Act, 28 U.S.C. § 1505, include claims for breach of trust relationships established by Congress. *See, e.g., Mitchell II*, 463 U.S. 206. Accordingly, just as Congress intended the Tucker Act to serve as the vehicle for litigating breach of contract claims against the government—and thus impliedly forbade any relief (damages, equitable remedies, or otherwise) on a contract under the APA—Congress likewise intended breach of trust claims to proceed under the Tucker Act and Indian Tucker Act, and not under the APA, especially claims for monetary relief. The Indian breach of trust cases discussed in recent years by the Supreme Court have risen through the CFC under the Tucker Act and the Indian Tucker Act, thus reinforcing the primacy of that venue. *See, e.g., Mitchell II*, 463 U.S. 206; *United States v. Navajo Nation*, 537 U.S. 488 (2003); *United States v. White Mountain Apache Tribe*, 537 U.S. 465 (2003). Indeed, the Supreme Court in *Mitchell II* reviewed the legislative history of the Indian Tucker Act and found that "an important goal of the Act was to ensure that it would 'never again be necessary to pass special Indian jurisdictional acts in order to permit the Indians to secure a court adjudication on any misappropriations of Indian funds.'" 463 U.S. at 214 (quoting 92 Cong. Rec. 5313 (1946) (statement of Rep. Jackson)). The Court noted that the House Report for the Indian Tucker Act stressed the same point on the need for legislation that would provide Indians access to the CFC to bring their breach of trust claims for obligations assumed by

- 48 -

the federal government: "If we fail to meet these obligations by denying access to the courts when trust funds have been improperly dissipated or other fiduciary duties have been violated, we compromise the national honor of the United States." 463 U.S. at 215 (quoting H.R. Rep. No. 1466, 79th Cong. 1st Sess., 4 (1945)).

The APA is a statute designed to provide remedies in cases that the Tucker Acts do not touch, and the 1976 amendments to the APA were never intended to create a scheme to circumvent or supplement the Tucker Acts and their limitations. Plaintiffs' proper remedy, if they have a valid breach of trust claim, lies, if anywhere, in the CFC under the Indian Tucker Act, not in this or any other district court.[24]

The foregoing argument is strengthened by the undisputed fact that Interior has provided Plaintiffs with reconciled account statements (*i.e.*, the TRP reports) identifying the balance of funds in each of the Tribal trust accounts pursuant to Section 304 of the 1994 Act (and including substantial supporting documentation). In satisfaction of Interior's obligations under Section 304, Plaintiffs and the other Tribes received in 1996 TRP reports and statements of account from the Interior Department, identifying the balance of funds in each tribal trust fund account for which the Secretary was responsible, and reconciled as of September 30, 1995. These TRP reports consisted of transaction-by-transaction account statements for each account for the period from July 1, 1972 (Fiscal Year 1973), to September 30, 1995 (Fiscal Year 1995), accompanied by (1) a report

---

[24]    To be sure, if Plaintiffs were to seek judicial review of the sufficiency of an agency's final actions to implement the accounting or other obligations of the 1994 Act, that review could occur under the APA and its waiver of sovereign immunity. In these cases, however, Plaintiffs have affirmatively disavowed seeking statutory review under the APA, and they have explicitly sought monetary relief under the guise of equitable remedies. Their claims, to the extent they are cognizable at all, would arise under the Tucker Acts so that the APA waiver of sovereign immunity does not apply.

describing the procedures performed for the FY 1973 to FY 1992 period and the results thereof, and (2) electronic images of source documents that supported certain FY 1973 to FY 1992 transactions. *See* U.S. General Accounting Office, BIA's Trust Fund Account Reconciliation Results, GAO/AIMD-96-63 (May 1996), cited in Nez Perce First Amend. Compl. ¶ 42 and Salt River Pima Maricopa Indian Community Compl. ¶ 30.[25]  Plaintiffs do not dispute having received Interior's reports and account statements produced pursuant to Section 304.  *See, e.g.,* Nez Perce Tribe First Amend. Compl. at ¶¶ 6, 42-46.[26]

Plaintiffs challenge the accuracy of their trust fund balances and request a remedial upward adjustment of those fund balances.  Regardless of whether Plaintiffs call such a remedy "restitution, disgorgement, other equitable relief," or merely an injunction to correct trust fund balances, it is clear that Plaintiffs seek compensation or monetary reward.  The proper court to hear Plaintiffs' claims that their trust accounts have been mishandled and that, as a result, their account balances ought to be higher, is the CFC.  *See Cape Fox Corp. v. United States*, 646 F.2d 399, 402 (9th Cir. 1981) (finding district court properly refused to grant declaratory judgment where it "would have operated only to determine the existence and extent of the damages to which [the Alaskan native village corporation] was entitled . . . [and] undermined the exclusive jurisdiction of the Court of Claims.")

If Plaintiffs' breach of trust claims seeking some type of "equitable restitution" are sufficient

---

[25]        Available at http://www.gao.gov/archive/1996/ai96063.pdf (last visited on June 15, 2008).

[26]        *See also* Salt River Pima Maricopa Indian Community Compl. ¶ 30, Ak-Chin Indian Community Compl. ¶ 30, Tohono O'odham Nation Compl. ¶ 30, Passamaquoddy Tribe of Maine Compl. ¶ 30, CRIT Second Amend. Compl. ¶ 25, Pechanga Band First Amend. Compl. ¶ 27, and Plaintiffs' Joint Memorandum In Opposition to Defendants' Motion For Remand and Stay of Litigation at 25.

to vest APA jurisdiction in a district court, it would be difficult to imagine any breach of trust claim

against a federal agency that could not similarly be restyled as an APA claim.  As observed by the

Court of Claims (a predecessor to the current CFC):

> Since the United States by reason of its nature acts only through agents, it is hard to
> conceive of a claim falling no matter how squarely within the Tucker Act which
> could not be urged to involve as well agency error subject to review under the APA
> . . . . We refuse to believe that Congress intended, in enacting the APA, so to destroy
> the Court of Claims by implication.

*Hoopa Valley Tribe v. United States*, 596 F.2d 435, 445 (Ct. Cl. 1979) (quoting *Warner v. Cox*, 487

F.2d 1301, 1306 (5th Cir. 1974); *accord, Consol. Edison Co. of New York,  Inc. v. United States*, 247

F.3d at 1385 ("This court and its sister circuits will not tolerate a litigant's attempt to artfully recast

its complaint to circumvent the jurisdiction of the Court of Federal Claims.") (citations omitted).

Because Plaintiffs' claims alleging breach of trust and seeking an accounting (as well as

other declaratory and injunctive relief) is in substance an action that would operate primarily to

determine the existence and extent of the damages to which Plaintiffs might claim entitlement, relief

under the APA is impliedly forbidden by the Tucker Act, and jurisdiction in the district court under

the APA is foreclosed by 5 U.S.C. § 702.

II.    PLAINTIFFS' PRE-1946 CLAIMS, INCLUDING ANY CLAIMS FOR AN
       ACCOUNTING RELATED TO THE INTERIOR DEPARTMENT'S TRUST
       MANAGEMENT BEFORE 1946, ARE BARRED BY SECTION 12 OF THE INDIAN
       CLAIMS COMMISSION ACT.

The Complaints challenge how Defendants have carried out their fiduciary obligations from

the "inception of the trust to the present."  *See, e.g.,* Ak-Chin Compl. ¶ 35.   No Plaintiff has

articulated or limited the time frame for which they seek an accounting, beyond the general assertion

of a desire for "full and complete accountings."  *See, e.g.*, Nez Perce Compl. ¶ 71.  Thus, Plaintiffs

appear to seek accountings extending back to the early 19th Century, if not earlier, based on the

- 51 -

allegation that they have never received such accountings from the federal government. *See, e.g.,* Nez Perce Compl. ¶¶ 9 to 20 and 26. Under established precedent and clear federal law, this Court lacks subject matter jurisdiction over any claims that could have been brought before the ICC, as Section 702 of the APA does not waive the United States's sovereign immunity for any such claims. The ICCA, 60 Stat. 1052 (1946), vested the ICC with exclusive jurisdiction to hear and determine all tribal trust claims against the federal government that existed as of August 13, 1946.

The ICCA is a statute that established exceptionally broad exclusive jurisdiction in a single tribunal—the ICC. The scope of the ICC's jurisdiction was so broad that it encompassed claims not otherwise cognizable in federal courts, including all legal, equitable, and moral claims. The ICCA provided that the following types of claims could be heard by the ICC:

> The Commission shall hear and determine the following claims against the United States on behalf of any Indian Tribe . . . (1) claims in law or equity arising under the Constitution, laws, treaties of the United States, and Executive Orders of the President; (2) all other claims in law or equity, including those sounding in tort, with respect to which the claimant would have been entitled to sue in a court of the United States if the United States was subject to suit; (3) claims which would result if the treaties, contracts, and agreements between the claimant and the United States were revised on the ground of fraud, duress, unconscionable consideration, mutual or unilateral mistake, whether of law or fact, or any other ground cognizable by a court of equity; (4) claims arising from the taking by the United States, whether as the result of a treaty of cession or otherwise, of lands owned or occupied by the claimant without the payment for such lands of compensation agreed to by the claimant; and (5) claims based upon fair and honorable dealings that are not recognized by an existing rule of law or equity.

ICCA § 2, 60 Stat. 1050.

Congress vested the ICC with such exceptionally broad jurisdiction, because it intended the ICC to serve as a comprehensive forum for the resolution of all possible claims existing before 1946, without limit as to time or subject matter. For that reason, the ICCA provided that "no claim existing" before August 13, 1946, and that had not been filed with the ICC by August 13, 1951,

could "thereafter be submitted to any court or administrative agency for consideration." ICCA § 12, 60 Stat. 1052;  *see also Navajo Tribe of Indians v. New Mexico*, 809 F.2d 1455, 1460 (10th Cir. 1987); *Oglala Sioux Tribe v. United States*, 650 F.2d 140, 142 (8th Cir. 1981); Wright & Miller, 14A Federal Practice & Procedure § 3660 n. 22 (collecting cases finding the ICCA to be a Tribe's exclusive remedy).  The broad and unambiguous phrase "no claim existing" ensured that no pre-1946 claim could be submitted, not only to the ICC, but also to <u>any</u> court, after 1951.

The legislative history for the ICCA re-affirms the Congressional intent to vest the ICC with time-limited exclusive jurisdiction to hear pre-1946 Tribal claims. Significantly, "[t]he 'chief purpose of the [Act was] to dispose of the Indian claims problem with finality.'"  *United States v. Dann,* 470 U.S. 39, 46 (1985) (quoting 92 Cong. Rec. 5312 (1946) and  H. R. Rep. No. 1466, 79th Cong., 1st Sess., 10 (1945)).   Moreover, Congress determined that "the jurisdiction of the Commission ought to be broad enough so that no Tribe could come back to Congress ten years from now and say that it had a meritorious claim which the Claims Commission was not authorized to consider."  92 Cong. Rec. 5312 (1946) (as quoted in *Navajo Tribe*, 809 F.2d at 1465). These goals, in addition to the plain wording of Section 12 of the ICCA, established firmly the fact that the ICC was the only tribunal with authority to adjudicate pre-1946 tribal claims against the Government. Plaintiffs could have, and should have, brought any pre-1946 claims, including any claims for an accounting, before the ICC.

The ICCA vested the ICC with broad authority to recognize and resolve all pre-1946 claims, including any accounting claims.  Ultimately, many Tribes (including some, if not all, of the

Plaintiffs here)[27] filed such pre-1946 accounting claims before the ICC.[28]  To the extent that Plaintiffs' pre-1946 accounting claims are premised upon a statutory prescription other than the 1994 Act, these claims are barred because Plaintiffs failed to bring them before the ICC.

Any pre-1946 claim that could have been brought by Plaintiffs under the ICC is barred regardless of whether they submitted such a claim to the ICC before the applicable jurisdictional deadlines.  Section 12 of the ICCA provided that Plaintiffs were required to submit any pre-1946 claims before the ICC by 1951.  *See* 60 Stat. 1052.  As held by the Court of Appeals for the Tenth Circuit, Tribes "w[ere] unambiguously given a five-year period to assert [pre-1946 claims] 'or forever hold [their] peace.' . . .  Because these claims clearly accrued before 1946, the Tribe[s] had until 1951 to assert them before the Commission . . . ."  *Navajo Tribe of Indians v. State of New Mexico.*, 809 F.2d at 1469-71 (10th Cir. 1987) (quoting 92 Cong. Rec. 5313 (1946)).

---

[27]    *See, e.g., Confederated Tribes of the Colville Reservation as the Representative of the Joseph Band of the Nez Perce Tribe, et al., v. United States*, 23 Ind. Cl. Comm. 39, 68-69 (1970) (settling Nez Perce Tribe's pre-1951 accounting claim); *Nez Perce Tribe of Idaho v. United States*, 228 Ct.Cl. 924 (1981) (settling Nez Perce Tribe's accounting claim for the years 1951 through 1981), *Papago Tribe of Ariz. v. United States*, 38 Ind. Cl. Comm. 542 (1976) (settling, *inter alia*, Tohono O'odham Nation's claim for a general accounting through June 30, 1951), *see also Papago Tribe of Ariz. v. United States*, 38 Ind. Cl. Comm. 559 (1976) (final award), *see also* Act of January 3, 1983, Pub. L. No. 97-408 (claims settlement legislation for Papago Tribe), *Salt River Pima-Maricopa Indian Community v. United States*, 6 Cl. Ct. 73 (1984) (describing Tribe's claim before the ICC for a fiduciary accounting from 1848 to August 13, 1946 in ICC docket no. 291 and settlements of such claim in 1978 and 1982); *Colo. River Indian Tribes v. United States*, 36 Ind. Cl. Comm. 217, 217-220 (1975) (entitled "Opinion On Plaintiffs' Motion To Compel A Proper Accounting And For Determination Of Issues Of Law"); *Colo. River Indian Tribes v. United States*, 221 Ct.Cl. 989 (1979) (settling Colorado River Indian Tribes' accounting claims brought pursuant to ICC docket 283-B).

[28]    Pursuant to the Court's Order dated May 6, 2008, Defendants reserve the right to make, at a later time, Tribe-specific arguments, such as those based upon Plaintiffs' claims before the ICC, including arguments based upon (1) Section 22 of the ICCA, which barred the relitigation of claims that were resolved under the ICCA, and/or (2) *res judicata*.

To the extent that Plaintiffs possessed accounting claims prior to 1946 or that the ICCA created such claims, Plaintiffs had a limited time to bring such legal, equitable, or moral claims. Given the ICCA's express intent to direct all pre-1946 claims exclusively to the ICC for disposition, this Court now lacks jurisdiction over any such claims.

The CFC's decision in *Osage Nation v. United States*, 57 Fed. Cl. 392, 398 (2003), does not present grounds for a contrary or different jurisdictional outcome here. That decision is not binding on this Court, and, in any event, it is easily distinguishable on the bases of several dispositive issues, as well as distinctions between the plaintiff's claims in that case and Plaintiffs' claims here. The *Osage Nation* decision held that Congress voided the ICCA's jurisdictional bar with appropriations acts stating that:

> [N]otwithstanding any other provision of law, the statute of limitations shall not commence to run on any claim, including any claim in litigation pending on the date of the enactment of this Act, concerning losses to or mismanagement of trust funds, until the affected tribe or individual Indian has been furnished with an accounting of such funds from which the beneficiary can determine whether there has been a loss . . . .

and that

> [n]otwithstanding any other provisions of law, for purposes of determining the date on which an Indian tribe received a reconciliation report for purposes of applying a statute of limitations, any such report provided to or received by an Indian tribe . . . shall be deemed to have been received by the Indian tribe on December 31, 1999.

*Osage Nation*, 57 Fed. Cl. at 396-97.

Reliance on the provisions of the appropriations legislation is misplaced, because Section 12 of the ICCA is not a "statute of limitation," as that term is commonly understood, but rather is a "statute of repose," which withholds jurisdiction from this Court on the basis that the ICC had exclusive jurisdiction to award a remedy for such Tribal claims. A "statute of repose" begins to run

independent of the time that the wrong has been or should have been discovered.  *See Prince Alexander v. Beech Aircraft Corp.*, 952 F.2d 1215, 1218 (10th Cir. 1991); *see also* 51 Am. Jur. 2d Limitation of Actions §§ 12, 31.  The claim assertion period in the ICCA, under the terms of Section 12 of the statute, began to run based on an occurrence entirely independent of a cause of action accruing.

When Congress used the term, "statute of limitations," it did so as a legal "term of art," and it knew that the Appropriation Acts would not apply to statutes of repose such as the jurisdiction-stripping provisions of the ICCA.  *See Burlington N. & Santa Fe Ry. Co. v. Poole Chem. Co.*, 419 F.3d 355, 362 (5th Cir. 2005) ("[T]he differences between statutes of limitations and statutes of repose are substantive, not merely semantic.")  Further, repeals by implication are disfavored, particularly "when the provision advanced as the repealing measure was enacted in an appropriations bill." *United States v. Will*, 449 U.S. 200, 221-22 (1980) (citing *TVA v. Hill*, 437 U.S. 153, 190 (1978)).  The *Osage* decision did not address any of the foregoing, especially the very real differences between a statute of limitation, such as those found at 25 U.S.C. §§ 2401 and 2501 and the exclusive jurisdiction and venue provisions of the ICC.[29]

Additionally, the *Osage* decision addressed the scope of the CFC's jurisdiction under the Indian Tucker Act, 28 U.S.C. § 1505.  The Indian Tucker Act delineates the CFC's jurisdiction

---

[29]    Further, the Appropriations Act language relied upon in *Osage* refers to "the <u>statute</u> of limitations" (emphasis supplied), a singular choice of words that is naturally read to refer to just one time-bar.  In this context, the obvious target of the Appropriations Acts provision is 28 U.S.C. § 2501, a classic statute of limitations barring claims filed more than six years after they have accrued.  The ICCA's limits on the Court's authority here are separate and additional to Section 2501.  Accordingly, the most natural reading of the scope of application of the Appropriations Act language would limit it to the statute of limitations found in Section 2501.

based in part on the date an alleged claim accrues. Such is not the case for this Court under 5 U.S.C. § 702. Rather, the waiver of sovereign immunity in Section 702 of the APA is limited in those situations, where, as here, other statues express Congress's intent to close the door to judicial review in the district courts based on other considerations, such as the availability of other, exclusive forums (such as the ICC).

Section 702 of the APA provides, in pertinent part, "Nothing herein (1) affects other limitations on judicial review or the power or duty of the court to dismiss any action or deny relief on any other appropriate legal or equitable ground; or (2) confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought." 5 U.S.C. § 702.[30] The APA "does not provide a back door for plaintiffs to raise claims," where other statutes "disallow such claims." *Alliance to Save Mattaponi v. U.S. Army Corps of Eng'rs*, 515 F. Supp. 2d 1, 6 (D.D.C. 2007). Rather than an inquiry about when the claims at issue accrued, Section 702 requires the wholly different inquiry into whether the ICCA expresses Congress's intent to forbid relief for the claims asserted here irrespective of when the claims accrued. In making that inquiry and construing the statutes at issue, "the Government's consent to be sued must be construed strictly in favor of the sovereign, and not enlarge[d] . . . beyond what the language requires." *United States v. Nordic Village, Inc.,* 503 U.S. 30, 34 (1992) (internal citations and quotations omitted).

The ICCA contains clear, indeed unmistakable, legislative intent restricting this Court's review of Plaintiffs' pre-1946 claims. The ICCA's jurisdictional bar applied to any accounting duty that Plaintiffs contend existed as of 1946 and requires dismissal of claims asserting the breach of

---

[30]    Likewise, a similar restriction is found in Section 701 of the APA that limits the availability of the APA and its waiver of sovereign immunity, "except to the extent that [other] statutes preclude judicial review." *See* 5 U.S.C. § 701(a) (1).

such duties.  Section 702 of the APA does not waive the United States's sovereign immunity for any claims that might have been brought before the ICC, and the Court should dismiss them from these cases.

III.   PLAINTIFFS' CLAIM FOR A NON-MONETARY ASSET ACCOUNTING SHOULD BE DISMISSED, BECAUSE CONGRESS HAS ESTABLISHED NO ACCOUNTING DUTY RELATING TO NON-MONETARY ASSETS.

   A.   Congress Has Established No Accounting Duty Relating to Non-Monetary Tribal Assets.

In the Tribal trust accounting cases, Plaintiffs seek accountings for non-monetary assets, in addition to trust fund accountings, and they cite the APA, specifically 5 U.S.C. § 702, as the waiver of sovereign immunity.  Nonetheless, "[t]he only agency action that can be compelled under the APA is action legally required." *SUWA*, 542 U.S. at 63. A claim under 5 U.S.C. § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a discrete agency action that it is required to take.  Plaintiffs allege that Defendants breached their trust duty to them in failing to provide, and unconscionably delaying performance of a complete, accurate, and adequate accounting of trust property.  *See, e.g.*, SRPM Compl. ¶ 20(a). Yet, as required under *Norton v. SUWA,* no Plaintiff has identified any provision of a treaty, statute or regulation requiring a discrete final agency action by the Defendants with respect to trust asset accounting.[31]

Plaintiffs cite various laws that create broad legal obligations and essentially ask the Court to impose an injunction requiring Defendants to comply with these laws and any additional equitable relief that the Court may choose to grant. This kind of non-discrete relief is specifically foreclosed by *SUWA*.  Plaintiffs seek a broad determination that Defendants have violated their trust

---

[31]Nor do Plaintiffs make any attempt to identify any basis on which a duty to account for trust property has been imposed on the Secretary of the Treasury.

responsibilities by failing to account for trust assets. These kinds of allegations are insufficient to support jurisdiction under the APA.

B.    The Doctrine of Exhaustion of Administrative Remedies Requires Dismissal of Plaintiffs' Non-Monetary Asset Accounting Claims.

Plaintiffs in these cases have failed to exhaust administrative remedies provided by Interior Department (specifically, BIA) rules for their non-monetary asset accounting claims, and accordingly Plaintiffs' claims must be dismissed. The APA "explicitly requires exhaustion of all intra-agency appeals mandated either by statute or by agency rule." *Darby v. Cisneros*, 509 U.S. 137, 147 (1993); *see also* 5 U.S.C. § 704. "[N]o one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." *Assoc. of Flight Attendants - CWA v. Chao*, 493 F.3d 155, 158 (D.C. Cir. 2007) (quoting *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 50-51 (1938)). The doctrine of exhaustion of administrative remedies "serves the twin purposes of protecting administrative agency authority and promoting judicial efficiency." *Id.* (quoting *McCarthy v. Madigan*, 503 U.S. 140, 145 (1992)). "The exhaustion requirement ensures that agencies—and not the federal courts—take primary responsibility for implementing the regulatory programs assigned by Congress." *Id.*; *see also McKart v. United States*, 395 U.S. 185, 193-95 (1969). The exhaustion doctrine "prevent[s] premature interference with agency processes." *Weinberger v. Salfi*, 422 U.S. 749, 765 (1975). Under the APA, parties are required to exhaust agency administrative remedies before they may seek judicial review. 5 U.S.C. § 704. Plaintiffs have failed to take the required administrative appeals for their non-monetary asset accounting claims and therefore these claims may not be heard under the APA.

In their complaints, Plaintiffs seek accountings for non-monetary assets, citing to 5 U.S.C.

§ 702 of the APA as the requisite waiver of sovereign immunity.  Plaintiffs allege that Interior has failed to produce certain documents and information related to its real property.  *See, e.g.*, Yankton Sioux Tribe Compl. ¶ 15; Pechanga First Amend. Compl. ¶ 21; CRIT Second Amend. Compl. ¶ 19. Plaintiffs further allege that Defendants have breached their duties by failing to provide, and unconscionably delaying performance of a complete, accurate, and adequate accounting of non-monetary trust property.  *See, e.g.*, Salt River Compl. ¶ 20(a); Yankton Sioux Rule 26 Report at 2; Pechanga First Amend. Compl. ¶¶ 50, 55; CRIT Second Amend. Compl. ¶¶ 19, 29.  At no point, however, do Plaintiffs allege any facts indicating that they sought this information or accounting through the applicable administrative process.

Existing departmental regulations and agency rules provide an avenue for obtaining information from the BIA concerning a tribe's non-monetary trust assets.  *See* 25 C.F.R. Part 2; *see also* 25 C.F.R. § 150.8 (authorizing BIA, upon request, to perform and provide a land title examination).  As far as Defendants can determine, Plaintiffs have failed to seek relief under these regulations before filing the present lawsuits, and their failure is a fatal flaw in their non-monetary asset claims as Interior Department regulations require exhaustion: "No decision, which at the time of its rendition is subject to appeal to a superior authority in the Department, shall be considered final so as to constitute Departmental action subject to judicial review under 5 U.S.C. § 704 unless when an appeal is filed, the official to whom the appeal is made determines that . . . the decision be made effective immediately."  25 C.F.R. § 2.6(a).  Plaintiffs do not have a ripe or justiciable claim, unless and until they have exhausted their administrative remedies.

The exhaustion requirement applies to challenges to alleged inaction by the BIA.  In *Coosewoon v. Meridian Oil Co.*, 25 F.3d 920 (10th Cir. 1994), the Tenth Circuit held that a party

must exhaust its administrative remedies under 25 C.F.R. § 2.8(a) before suing BIA for alleged

inaction:

> Consistent with the exhaustion requirement, the Secretary has instituted an administrative procedure by which a party may challenge the Secretary's inaction concerning a particular issue. Under this procedure, a party may request that the Secretary take action on a particular matter, *see* 25 C.F.R. 2.8(a) . . .
>
> Plaintiffs' complaint is with the Secretary's failure to act . . . . The Department of Interior has provided Plaintiffs with an administrative remedy concerning this inaction regarding lease cancellation; as a result, we hold Plaintiffs must exhaust this remedy before seeking judicial review. *See* 25 C.F.R. 2.6(a). Thus, the district court properly dismissed Plaintiffs' lease cancellation claim for failure to exhaust.

25 F.3d at 925; *see also Davis v. United States*, 199 F. Supp. 2d 1164, 1179 (W.D. Okla. 2002)

(dismissing plaintiffs' claims because they failed to exhaust administrative procedures pursuant to

25 C.F.R. § 2, stating that "even in the absence of requested action of a BIA official, BIA regulations

still require a plaintiff to exhaust its specified administrative procedures before requesting judicial

review").

      25 C.F.R. § 2.8 sets forth the proper procedure for challenging agency inaction, providing

that:

> (a) A person or persons whose interests are adversely affected, or whose ability to protect such interests is impeded by the failure of an official to act on a request to the official, can make the official's inaction the subject of appeal, as follows:
>
> > (1) Request in writing that the official take the action originally asked of him/her;
> > (2) Describe the interest adversely affected by the official's inaction, including a description of the loss, impairment or impediment of such interest caused by the official's inaction;
> > (3) State that, unless the official involved either takes action on the merits of the written request within 10 days of receipt of such request by the official, or establishes a date by which action will be taken, an appeal shall be filed in accordance with this part.

Plaintiffs' claims are founded on Interior's alleged failure to provide information relating to their

trust lands and the agency's alleged delay in providing an adequate accounting of non-monetary trust property.  Because Interior has adopted, by rule, a specific procedure for addressing such claims, Plaintiffs are required to adhere to that procedure as mandated by *Coosewoon* and 25 C.F.R. § 2.8 prior to raising such claims in this Court.

Plaintiffs have failed to route their claims for a non-monetary asset accounting through 25 C.F.R. Part 2, the rules that govern "Appeals from Administrative Actions" of the BIA.  These regulations provide the appropriate vehicle for presenting Interior with any factual basis for conducting an investigation or taking some other management action.  Plaintiffs' failure to pursue an administrative appeal pursuant to section 2.8 of the regulations means that their current claims for a non-monetary asset accounting may not be reviewed under the APA.  *See Reiter v. Cooper*, 507 U.S. 258, 269 (1993) (finding that a suit filed before exhausting the available administrative remedies by which to obtain the requested information is premature and should be dismissed); *Stock West Corp. v. Lujan*, 982 F.2d 1389, 1393-94 (9th Cir. 1993) ("On three occasions, we have upheld the dismissal of lawsuits challenging BIA decisions under the [APA] on the ground that the plaintiff failed to take the required administrative appeal.  In doing so, we have noted the jurisdictional nature of the administrative appeal requirement") (citations omitted).

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that this Court dismiss the Complaint(s), or the claims therein, pursuant to Fed. R. Civ. P. 12(b)(1) and 12(h)(3) for lack of subject matter jurisdiction, Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted, and Fed. R. Civ. P. 12(c), because Defendants are entitled to judgment on the pleadings as a matter of law.

Respectfully submitted this 16th day of June, 2008,

RONALD J. TENPAS
Assistant Attorney General

___/s/ John Martin____
JOHN H. MARTIN
BRIAN COLLINS
ANTHONY P. HOANG
United States Department of Justice
Environment and Natural Resources Division
Natural Resources Section
P.O. Box 663
Washington, D.C. 20044-0663
Tel: (303) 844-1383
Tel: (202) 305-0428
Tel: (202) 305-0241
Fax: (202) 353-2021

Attorneys for Defendants

OF COUNSEL:

LAWRENCE JENSEN
PAUL SMYTH
ELISABETH BRANDON
THOMAS BARTMAN
Office of the Solicitor
United States Department of the Interior
Washington, D.C.  20240

TERESA DAWSON
Office of the Chief Counsel
Financial Management Service
United States Department of the Treasury
Washington, D.C.  20227

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

| | | |
|---|---|---|
| Yankton Sioux Tribe v. Kempthorne, *et al.*, | ) ) ) | Civil Action No. 03-1603 (JR) |
| Pechanga Band of Luiseno Mission Indians v. Kempthorne, *et al.*, | ) ) ) | Civil Action No. 06-2206 (JR) |
| Colorado River Indian Tribes v. Kempthorne, *et al.*, | ) ) ) | Civil Action No. 06-2212 (JR) |
| Tohono O'odham Nation v. Kempthorne, *et al.*, | ) ) ) | Civil Action No. 06-2236 (JR) |
| Nez Perce Tribe, et al., v. Kempthorne, *et al.*, | ) ) ) | Civil Action No. 06-2239 (JR) |
| Passamaquoddy Tribe of Maine v. Kempthorne, *et al.*, | ) ) ) | Civil Action No. 06-2240 (JR) |
| Salt River Pima-Maricopa Indian Community v. Kempthorne, *et al.*, | ) ) ) | Civil Action No. 06-2241 (JR) |
| Ak-Chin Indian Community v. Kempthorne, *et al.*, | ) ) ) | Civil Action No. 06-2245 (JR) |

_____)

### [PROPOSED] ORDER

This matter is before the Court on the Defendants' Motion to Dismiss.  Upon

consideration of the motion, the supporting memoranda, the opposing memoranda, the record,

and the relevant law, it is on this _____ day of _____, 2008,

ORDERED that, for good cause shown, the Defendants' motion is GRANTED.

IT IS FURTHER ORDERED that Judgment shall be entered for Defendants.


Dated: _____          _____

                                                        JAMES ROBERTSON
                                                        United States District Judge